**Herman CRESPO, Plaintiff,**

v.

**NEW YORK CITY POLICE COMMISSIONER, et al., Defendants.**

No. 93 Civ. 8847 (JGK).

United States District Court, S.D. New York.

June 17, 1996.

---

**OPINION AND ORDER**

KOELTL, District Judge:

This is an action alleging violations of 42 U.S.C. § 1983 and New York State law by several New York City Police Officers, the City of New York, and the New York City Police Commissioner. The defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this action on several grounds. First, the defendants claim that the plaintiff's claims that he was unlawfully stopped, wrongfully arrested, and subjected to an unreasonable search are barred by the doctrine of collateral estoppel. Second, the defendants argue that the plaintiff's state law claims are barred by the applicable statute of limitations and by the plaintiff's failure to file a notice of claim. Third, the defendants argue that the plaintiff's claims against the City of New York and the New York City Police Commissioner are untimely. Fourth, the defendants contend that because a police officer is entitled to absolute immunity for his testimony before a grand jury, the plaintiff's Fifth, Sixth, and Seventh Claims, which involve this testimony, must be dismissed. Finally, the defendants argue that the plaintiff has failed to allege sufficient facts to support a conspiracy claim. In addition, the plaintiff moves to compel the production of an unredacted version of a document prepared by an assistant district attorney for the State of New York. For the reasons that follow, the defendants' motion is granted in part and denied in part, and the plaintiff's motion is denied.

## I.

A court should dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief.'" *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). When considering motions to dismiss, the Court must accept as true the factual allegations in the complaint and construe all reasonable inferences in the plaintiff's favor. *Leatherman v.*

Sean R. O'Brien, New York City, for Plaintiff.

Lorie Almon, New York City Law Department, New York City, for Defendants.

*Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

Crespo alleges that on October 8, 1990, he was attempting to cross the street when he was grabbed by a police officer. This officer, whom the plaintiff identifies as the defendant Police Officer Joseph Truglia, threw Crespo against a parked car and asked, "Where is it?" (Compl. ¶ 18.)[1] Truglia then asked Crespo, "Where is the gun?" After Crespo said he did not have a gun and had no idea what the officer was talking about, Truglia searched Crespo but found no weapon. (Compl. ¶¶ 19–20.) Defendant Police Officer Byrant Booth joined Officer Truglia during the search. (Compl. ¶ 21.) Booth and Truglia escorted Crespo to a boarding house where Crespo's acquaintance Joe Martinez rented Room 9. (Compl. ¶¶ 10, 21.) Crespo had slept on Martinez's couch during the morning of October 8 and had later been outside the boarding house waiting to give a set of keys to Martinez's girlfriend when she arrived. (Compl. ¶¶ 10–14.) When Crespo refused to comply with the officers' request to open the door to the boarding house, Officer Truglia banged Crespo's head against the door. (Compl. ¶ 21.) Defendant Police Officers Denis O'Keeffe, Ernest Lungaro, Mark Kugler, James Gallagher, Robert Fitzpatrick, and Edward Griffith joined Officers Truglia and Booth in searching the boarding house. (Compl. ¶ 23, 32.) At one point Crespo asked whether he was under arrest, and Officer Truglia told him he was "under arrest for many things." (Compl. ¶ 25.) Officer Booth then said to Officer Truglia, "You don't have anything on him." (Compl. ¶ 26.) The officers used the keys Martinez had left with Crespo to open Room 9, where the officers discovered three guns, some ammunition, and a hypodermic needle. (Compl. ¶ 13, 36–37.) Crespo was taken to the 52nd Precinct, where he overheard Officer O'Keeffe say to Officer Lungaro, "We are going to have to say we were chasing him." (Compl. ¶ 41.)

On October 10, 1990, Officer O'Keeffe swore out an accusatory statement against Crespo. (Compl. ¶ 46.) Crespo claims that Officer O'Keeffe knew the accusatory instrument was based on false information. (Compl. ¶ 46.) On October 12, 1990, Defendant Officer O'Keeffe testified before a grand jury about the events of October 8, 1990. (Compl. ¶ 47.) Crespo claims that this testimony was malicious and false, that Officers Lungaro, Truglia, Booth, Griffith, Fitzpatrick, and Gallagher were all aware that it was false and that O'Keeffe had falsified documents in connection with his testimony, and that these officers were engaged in a malicious conspiracy to deprive Crespo of his constitutional rights. (Compl. ¶¶ 47–48.) No other evidence was presented to the grand jury. (Compl. ¶ 50.) On the basis of Officer O'Keeffe's testimony, Crespo was indicted for three counts of criminal possession of a weapon in the third degree. (Compl. ¶ 49.) One of these counts alleged actual possession of a firearm, and two counts alleged constructive possession of a firearm. Crespo was also charged with one count of criminal possession of stolen property in the fourth degree, and criminal possession of a hypodermic needle. (Compl. ¶ 49.) On January 21, 1991, the charge of possession of stolen property was dismissed for insufficiency of the evidence. (Compl. ¶ 51.)

At a pretrial suppression hearing, Crespo challenged the constitutionality of the officers' actions and requested that the evidence discovered during the search of Martinez's apartment be suppressed. The State called one witness at the hearing, Officer O'Keeffe, and Crespo called four witnesses, Officers Lungaro and Truglia, Melinda Vega (a woman present at the boarding house when Crespo was arrested), and himself. The trial court denied Crespo's motion, finding that the police officers' testimony was credible and that although the testimony of Crespo and Vega was "not incredible on its face," Crespo failed to prove the illegality of the officer's conduct by a preponderance of the evidence. (Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint, Appendix A.) The trial court

---

1. All cites are to the plaintiff's Second Amended Complaint.

credited the officers' testimony that they responded to a radio call of a "man with a gun" and found Crespo, who met the description, running with a gun in his hand. They then chased him into the room where the arrest and search occurred. At trial, Crespo was found not guilty of actual possession of a firearm but was found guilty of two counts of constructive possession of a firearm and of one count of criminal possession of a hypodermic instrument. (Compl. ¶ 53.)

On October 6, 1993, while in keeplock at Green Haven Correctional Facility, Crespo handed the original complaint for the current lawsuit to a corrections officer for filing. The complaint was returned to Crespo, who was told he had failed to provide disbursement forms. (Compl. ¶ 56.) On October 8, 1993, Crespo returned the complaint to a corrections officer for mailing after having obtained the disbursement form. (Compl. ¶ 57.) The complaint was again returned to Crespo with a request that he supply an "advance" disbursement form because he did not have sufficient funds in his account. (Compl. ¶ 57.) Crespo returned the complaint to a corrections officer on October 10, 1993, and did not see it again. (Compl. ¶ 57.)

Crespo appealed his conviction, arguing among other things that the trial court improperly denied his motion to suppress. Brief for Defendant–Appellant in *People v. Crespo* at 26–31. On November 16, 1993, Crespo's conviction on the weapons possession charges and the hypodermic needle possession charge was overturned by the New York State Supreme Court, Appellate Division, First Department. *People v. Crespo,* 198 A.D.2d 85, 603 N.Y.S.2d 838 (1st Dep't 1993), *appeal denied,* 82 N.Y.2d 923, 610 N.Y.S.2d 175, 632 N.E.2d 485 (1994). The Appellate Division dismissed the indictment against Crespo on the grounds that "the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt." 198

A.D.2d at 86, 603 N.Y.S.2d at 839. The court stated that the People failed to establish that Crespo had dominion and control over the premises where the contraband was found, an element essential to the People's proof. The Appellate Division also held that even if the evidence were sufficient to convict Crespo, the conviction would nevertheless have to be overturned because the trial court failed to give a circumstantial evidence charge to the jury. 198 A.D.2d at 86–87, 603 N.Y.S.2d at 840.

After counsel was appointed to represent Crespo, Crespo filed a Second Amended Complaint in this action on December 18, 1995. It was in this complaint that the plaintiff added a § 1983 claim against the City of New York and the Police Commissioner.[2]

## II.

The defendants first argue that the plaintiff's claims that he was unlawfully stopped, wrongfully arrested, and subjected to an unreasonable search are barred by the doctrine of collateral estoppel. The defendants claim that the plaintiff had a full and fair opportunity to challenge the constitutionality of the police actions at a pretrial suppression hearing during the prior state criminal proceeding, where the plaintiff's motion to suppress was denied.

Under 28 U.S.C. § 1738, federal courts " 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered.' " *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). This rule applies to suits in federal court

---

**2.** The Second Amended Complaint asserts the following claims:

First Claim: 42 U.S.C. § 1983: False arrest
Second Claim: 42 U.S.C. § 1983: Unlawful stop
Third Claim: 42 U.S.C. § 1983: Excessive force
Fourth Claim: 42 U.S.C. § 1983: Unlawful search

Fifth Claim: 42 U.S.C. § 1983: Malicious prosecution
Sixth Claim: 42 U.S.C. § 1983: Conspiracy
Seventh Claim: 42 U.S.C. § 1983: *Monell* claim
Eighth Claim: State law false arrest
Ninth Claim: State law battery
Tenth Claim: State law malicious prosecution

brought pursuant to 42 U.S.C. § 1983. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Migra,* 465 U.S. at 81–82, 104 S.Ct. at 896–97; *Golino,* 950 F.2d at 869.

■ Under New York law, "[t]he doctrine of collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.'" *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457 (2d Cir.1995) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984)). Collateral estoppel applies only where "(1) 'the issue must have been material to the first action or proceeding and essential to the decision rendered therein' and (2) 'the party against whom collateral estoppel is asserted [must have been] afforded a full and fair opportunity in the prior [ ] proceeding to contest the decision now said to be controlling....'" *Id.* at 1457 (quoting *Ryan,* 62 N.Y.2d at 500–01, 478 N.Y.S.2d at 826, 467 N.E.2d at 490); *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir. 1991); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985). The party seeking the benefit of collateral estoppel bears the burden of proving that the issues involved in a prior proceeding and those raised currently are identical, while the opponent of preclusion has the burden of proving the absence of a full and fair opportunity to litigate the issue in the prior proceeding. *Khandhar,* 943 F.2d at 247–48; *Kaufman,* 65 N.Y.2d at 456, 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *Ryan,* 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

■ The parties do not appear to dispute that issues the state court determined in the suppression hearing were identical to the issues before this court. The trial court found that the police officers who chased the plaintiff had probable cause to arrest him and that they properly conducted a warrantless search of his person and the area within his immediate control. The plaintiff argues, however, that he should not be collaterally estopped from relitigating these issues in the current proceeding because he did not have a full and fair opportunity to litigate the constitutionality of the police actions at his pretrial suppression hearing. The plaintiff contends that at the suppression hearing he was denied the right to call crucial witnesses, he was provided with the prior testimony of a crucial witness only minutes prior to the suppression hearing, and important evidence was withheld from him. The plaintiff contends that collateral estoppel is inappropriate because the pretrial suppression determination was effectively relitigated at trial, the jury's verdict was inconsistent with the suppression determination, and the defendant's conviction was reversed on appeal. In addition, the plaintiff alleges that the doctrine of collateral estoppel does not apply in this case because he was effectively unable to obtain appellate review of the state trial court's suppression determination because the appellate court reversed his conviction without reaching the validity of the results of the suppression hearing, and a determination on the suppression motion issues was not an essential part of appellate court's final judgment.

■ The plaintiff's strongest—and dispositive—argument against the application of the doctrine of collateral estoppel is that the appellate court overturned his conviction without addressing whether the trial court correctly decided his motion to suppress. Under New York law, "a party has not had a full and fair opportunity to litigate an issue if it has had no opportunity to appeal the adverse finding." *Fletcher,* 68 F.3d at 1458 (citing *People v. Medina,* 208 A.D.2d 771, 772, 617 N.Y.S.2d 491, 493 (2d Dep't 1994), *appeal denied,* 84 N.Y.2d 1035, 623 N.Y.S.2d 191, 647 N.E.2d 463 (1995)); *see also Pinkney v. Keane,* 920 F.2d 1090, 1096 (2d Cir. 1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991) (collateral estoppel does not apply when appellate review is unobtainable as a matter of law). Here, although Crespo argued to the Appellate Division that the trial court wrongly decided his suppression motion, the appellate court did not reach this issue in its opinion reversing his conviction. Indeed, the appellate court did not need to reach this issue because it

held that Crespo's conviction was not supported by sufficient evidence.

The circumstances of this case are similar to those cases where the doctrine of collateral estoppel has been held not to apply because appellate review of a suppression determination in a prior proceeding was foreclosed by an acquittal or a guilty plea. *See, e.g., Medina,* 208 A.D.2d at 772, 617 N.Y.S.2d at 493 (suppression decision in prior criminal proceeding had no collateral estoppel effect because prosecutor did not have opportunity to appeal decision because prior proceedings terminated with a guilty plea); *Williams v. Moore,* 197 A.D.2d 511, 513, 602 N.Y.S.2d 199, 201–02 (2d Dep't 1993) (suppression determination insufficiently final where dismissal of charges precluded appeal); *People v. Howard,* 152 A.D.2d 325, 330, 548 N.Y.S.2d 785, 788 (2d Dep't 1989), *appeal denied,* 75 N.Y.2d 814, 552 N.Y.S.2d 564, 551 N.E.2d 1242 (1990) (results of suppression hearing have no collateral estoppel effect when defendant is acquitted because defendant could not seek appellate review of suppression ruling); *compare United States v. United States Currency,* 895 F.2d 908 (2d Cir.), *cert. denied sub nom. Parker v. United States,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990) (applying collateral estoppel to suppression determination in state-court proceeding where plaintiff had pleaded guilty, appealed suppression decision, and lost appeal); *Greene v. Civilian Police Review Bd.,* No. 86 Civ. 0212, 1988 WL 31857, at *3–4 (S.D.N.Y. Mar. 25, 1988) (holding that plaintiff was collaterally estopped from relitigating whether evidence and statements made by him were obtained in an unlawful manner where plaintiff had been convicted and conviction was upheld on appeal).

Crespo also argues that the suppression determination should not be given preclusive effect because this decision involved a subsidiary issue that was not essential to the final judgment. In *Wilson v. Steinhoff,* 718 F.2d 550 (2d Cir.1983), the Court of Appeals for the Second Circuit held that when there is a denial of a motion to suppress followed by the acquittal of the defendant, the suppression determination is considered "neither a final judgment nor an essential precursor to what was in fact the final judgment, the unappealable judgment of acquittal," and therefore was not entitled to preclusive effect. *Id.* at 552. The same can be said of the suppression determination in this case. The trial court's denial of Crespo's suppression motion was not a final judgment, and a finding of probable cause for the arrest was certainly not essential to the appellate court's decision to reverse the plaintiff's conviction. Accordingly, because the trial court's decision to deny Crespo's motion to suppress was not essential to the final judgment in the previous action, that determination is not entitled to preclusive effect. *See Owens v. Treder,* 873 F.2d 604, 611 (2d Cir.1989) (holding that the doctrine of collateral estoppel does not apply when a party seeking to invoke the doctrine fails to show that a determination that a confession was admissible was essential to the appellate court's affirmance of the conviction).

Therefore, the defendants' motion to dismiss the plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh Claims on the grounds of collateral estoppel is denied.

### III.

The defendants argue that the plaintiff's state law claims must be dismissed for two reasons: (1) they are untimely because they were not filed within the applicable one-year statute of limitations, and (2) the plaintiff failed to file a notice of claim as New York law requires prior to any action seeking damages under state law from the City of New York or its employees.[3] The plaintiff conceded at oral argument that his state-law causes of action must be dismissed for both of these reasons. He does not allege that he filed a notice of claim and does not dispute that this failure is fatal to his state law claims. *See* N.Y.Gen.Mun.L. §§ 50–e, 50–i; *see Dortz v. City of New York,* 904 F.Supp. 127, 141 (S.D.N.Y.1995) (N.Y.Gen.Mun.L.

---

3. The plaintiff is not required to file a notice of claim with respect to his claims under § 1983. *See Felder v. Casey,* 487 U.S. 131, 141, 108 S.Ct. 2302, 2308, 101 L.Ed.2d 123 (1988) (notice-of-claim statutes are inapplicable to federal § 1983 claims).

§ 50–e applies to tort actions); *Shabazz v. Dolan,* No. 95 Civ. 2116, 1995 WL 476698, at *1 (S.D.N.Y. Aug. 10, 1995); *Pravda v. County of Saratoga,* —— A.D.2d ——, ——, 637 N.Y.S.2d 508, 511 (3d Dep't 1996) (affirming dismissal of state-law claims for battery and false arrest because plaintiff failed to comply with notice-of-claim provisions). The plaintiff also agrees that his state law claims for false arrest and battery are barred by the applicable one-year statute of limitations. *See* N.Y.Civ.Prac.L. & R. § 215(3). Accordingly, the defendants' motion to dismiss the Eighth, Ninth, and Tenth Claims of the Second Amended Complaint alleging the state law claims of false arrest, battery, and malicious prosecution must be granted.

### IV.

The defendant also argues that the Second, Third, and Fourth Claims must be dismissed as time-barred because the plaintiff's complaint was not filed until two days after the statute of limitations for these claims expired. The plaintiff responds that he timely filed the complaint containing these claims because he delivered his complaint to prison officials within the statute of limitations.

■ The Second, Third, and Fourth Claims allege respectively that the plaintiff was deprived of his constitutional rights under 42 U.S.C. § 1983 by an unlawful stop, the use of excessive force, and an unreasonable search and seizure.[4] The plaintiff's § 1983 claims are governed by a three-year statute of limitations prescribed by New York law. *See Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989) (holding that § 1983 action in state with more than one statute of limitations is governed by residual or general personal injury statute of limitations, which in New York is three years); *Murphy v. Lynn,* 53 F.3d 547, 548 (2d Cir.1995) (statute of limitations for § 1983 claims in New York is three years).

In *Dory v. Ryan,* 999 F.2d 679 (2d Cir. 1993), *modified on reh'g,* 25 F.3d 81 (2d Cir.1994), the Court of Appeals for the Second Circuit held that under Fed.R.Civ.P. 5(e), the complaint of an incarcerated *pro se* plaintiff is considered "filed" when the complaint is delivered to prison officials. *Id.* at 682. This rule recognizes "the inherent disadvantage suffered by the *pro se* litigant in his inability to monitor the course of his litigation." *Id.*

■ Crespo, who initiated this action *pro se,* claims that he delivered the complaint for this action to prison officials on October 6, 1993, two days before the three-year statute of limitations expired on his § 1983 claims, but that prison officials returned the complaint to him because he had failed to provide a disbursement form. On October 8, 1993, the day the statute of limitations expired, Crespo returned the complaint to a corrections officer for mailing after having obtained the disbursement form. The complaint was again returned to Crespo with a request that he supply an "advance" disbursement form because he did not have sufficient funds in his account. Crespo returned the complaint to a corrections officer on October 10, 1993. Crespo claims that he was in keeplock in Green Haven Correctional Facility's hospital ward and did not have "free access" to disbursement forms while he was there. (Compl. ¶ 56.)

The defendants dispute that Crespo actually delivered the complaint to prison officials before the statute of limitations expired, but acknowledged at oral argument that this argument rests on issues of fact that cannot be decided on a motion to dismiss. Whether the plaintiff delivered his complaint to the prison officials in a timely manner, whether the prison officials promptly returned the defective papers, and whether the prison mail regulations are reasonable are questions best decided after both parties have an opportunity to present evidence concerning the filing of the complaint. Accordingly, construing the facts in favor of the plaintiff, the defendants' motion to dismiss the Second, Third, and Fourth Claims as untimely is denied without prejudice. *See Ortiz v. Cornetta,* 867

---

4. The defendants' argument would also apply to the First Claim alleging false arrest in violation of § 1983, but the defendants did not expressly make this argument in their brief. Such an argument against the First Claim, however, would also be unavailing for the same reasons explained with respect to the Second, Third, and Fourth Claims.

F.2d 146, 149 (2d Cir.1989) (motion to dismiss complaint on grounds that complaint was untimely filed with the *pro se* clerk's office should be denied because there was a question whether the *pro se* clerk's office had received the complaint before the expiration of the statute of limitations but had sent it back to the plaintiff for corrections); *but see Dison v. Whitley*, 20 F.3d 185, 187 (5th Cir. 1994) (prisoner did not timely file a notice of appeal where he failed to place the proper postage on the envelope containing the notice when he delivered it to prison officials; prison regulation involved was "reasonable"); *Thompson v. Rasberry*, 993 F.2d 513, 515 (5th Cir.1993) (prisoner has obligation to do all he can do to ensure the timely filing of documents with the clerk of the court; "[f]ailure to stamp or properly address outgoing mail or to follow reasonable prison regulations governing prisoner mail does not constitute compliance with this standard").

### V.

 The defendants argue that the § 1983 claim against the City of New York and the Police Commissioner must be dismissed because it is untimely. The plaintiff alleges pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that the City of New York and the Police Commissioner are liable under § 1983 because they "foster[ed] a policy pursuant to which perjury and the falsification of documents were methods of securing indictments and convictions of innocent individuals." (Compl. ¶ 80.) The defendants contend that this claim is time-barred because it accrued on the date of the alleged false arrest, October 8, 1990, and the plaintiff did not add the New York City Police Department and the Police Commissioner as defendants until the plaintiff filed an amended complaint on December 18, 1995.[5]

 Federal law governs the date of accrual of § 1983 claims. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). The parties agree that

the thrust of the claims against the City and the Police Commissioner is a policy of malicious prosecution based on perjured testimony. It is well-established that for § 1983 claims based on malicious prosecution the statute of limitations does not begin to run until the underlying criminal action is terminated in favor of the accused. *Heck v. Humphrey*, 512 U.S. 477, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Murphy*, 53 F.3d at 548. Here, the underlying criminal action was not terminated in favor of Crespo until the Appellate Division rendered its decision on November 16, 1993. Because the plaintiff added the § 1983 claim against the City of New York and the Police Commissioner on December 18, 1995, less than three years after the underlying criminal action was terminated, this claim is timely. Accordingly, the defendants' motion to dismiss the Seventh Claim as untimely is denied.

### VI.

Finally, the defendants contend that the plaintiff's claims against the individual officers for malicious prosecution and conspiracy and against the City of New York for fostering malicious prosecutions must be dismissed because Police Officer O'Keeffe's testimony, which forms the basis for all of these claims, is entitled to absolute immunity. In addition, the defendants claim that the plaintiff has failed to state a valid claim for conspiracy because he alleges only that the defendants had knowledge of Officer O'Keeffe's testimony.

 The plaintiff is correct, and the defendants agreed at oral argument, that the Court of Appeals for the Second Circuit distinguishes between those witnesses whose role is limited to providing testimony and those witnesses who played a role in initiating the prosecution as a complaining witness. *See White v. Frank*, 855 F.2d 956, 958–61 (2d Cir.1988); *compare Briscoe v. LaHue*, 460

---

5. The defendants' motion to dismiss was originally directed at the plaintiff's Amended Complaint. The Court later permitted the plaintiff to file a Second Amended Complaint, and the defendants' motion was deemed directed at that complaint.

U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (police officers are immune from § 1983 liability based on their testimony as witnesses at trial). Complaining witnesses are not entitled to immunity if they initiate a baseless prosecution. *White,* 855 F.2d at 961. For the purposes of a motion to dismiss, the Court must accept as true the plaintiff's allegations that Officer O'Keeffe presented false testimony before the grand jury, that this evidence was the only evidence presented to the grand jury, and that therefore his testimony was the sole cause of the plaintiff's indictment. Police Officer O'Keeffe is not therefore entitled to immunity for his testimony to the grand jury because according to the facts alleged in the complaint he acted as a complaining witness and initiated a baseless prosecution against Crespo. Accordingly, the defendants' motion to dismiss the Fifth, Sixth, and Seventh Claims on the grounds that Officer O'Keeffe's testimony is protected by absolute immunity is denied.

The defendants also argue that the plaintiff has failed to state a claim for conspiracy. The plaintiff claims that Police Officer O'Keeffe falsely testified before a grand jury on October 12, 1990, that the other individual defendants were aware that Officer O'Keeffe's testimony was untrue, and that they therefore conspired to allow Officer O'Keeffe to testify falsely.

There is no heightened particularity requirement to state a claim for conspiracy under § 1983. *See Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163 (no heightened pleading requirement in actions alleging municipal liability under § 1983); *Ferran v. Town of Nassau,* 11 F.3d 21, 23 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994) (citing *Leatherman* in finding conspiracy allegations sufficient to state a claim under § 1983). However, " 'conclusory, vague, or general allegations that the defendants have engaged in a conspiracy ·to deprive [the plaintiff] of his constitutional rights' " are insufficient to state a claim for conspiracy under § 1983. *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995) (quoting *Dwares v. City of New York,* 985 F.2d 94,

100 (2d Cir.1993)); *see also Sykes v. James,* 13 F.3d 515, 521 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994) (conclusory allegations of conspiracy are insufficient to withstand a 12(b)(6) motion to dismiss); *Fariello v. Rodriguez,* 148 F.R.D. 670, 677 (E.D.N.Y.1993), *aff'd,* 22 F.3d 1090 (2d Cir.1994) (TABLE) (citing *Leatherman* for principle that although § 1983 claims are not held to a heightened pleading standard, the complaint must contain more than broad-based conclusory statements).

Crespo's allegations of conspiracy are not merely vague and conclusory; rather, he has alleged some facts from which the existence of a conspiracy could be inferred. The plaintiff claims while he was being held at the precinct house after his arrest, he overheard the defendant Officer O'Keeffe say to Defendant Officer Lungaro that "we are going to have to say we were chasing him." (Compl. ¶ 41.) Crespo alleges that "[d]efendant Officers Lungaro, Truglia, Booth, Griffith, Fitzpatrick and Gallagher were aware that O'Keeffe testified at the grand jury, were aware that his testimony was false, and were aware that O'Keeffe had falsified documents in connection with his testimony." (Compl. ¶ 48.) Crespo contends that these officers, who were all involved in his arrest, had an agreement to deprive him of his federal rights. (Compl. ¶ 48.) Recognizing that a plaintiff usually does not have access to the facts surrounding a conspiracy claim and that conspiracies are seldom proven with direct evidence, the Court finds that the factual allegations contained in Crespo's Second Amended Complaint are sufficient to state a claim for conspiracy under § 1983. Accordingly, the defendants' motion to dismiss the plaintiff's conspiracy claim is denied.

### VII.

The plaintiff moves to compel the production of a complete, unredacted copy of a document that allegedly contains statements made by Police Officer Lungaro. The motion is denied.

Crespo claims that the document he seeks contains or refers to statements made by

Officer Lungaro. The defendants respond that although the plaintiff accurately describes the portion of the document that was provided to him in connection with his criminal prosecution, the redacted portions of the document concern statements between the Assistant District Attorney ("ADA") who authored the document and two other ADAs and do not recount any factual statements made by Officer Lungaro. The defendants claim that this document is accordingly protected by the work-product privilege as set forth in Fed.R.Civ.P. 26(b)(3).

The plaintiff sought the document in support of his argument that he was denied a full and fair opportunity to contest the suppression motion and that therefore the results of that motion should not be given preclusive effect. The Court has already concluded that the results of that hearing do not have preclusive effect. Because the document is therefore wholly unnecessary to the plaintiff for the purported reason for which it is sought, the plaintiff's motion to compel its production is denied.

## CONCLUSION

For the reasons stated above, the Court orders the following: (1) the defendants' motion to dismiss the First, Second, Fourth, Fifth, Sixth, and Seventh Claims on the grounds of collateral estoppel is **DENIED**; (2) the defendants' motion to dismiss the plaintiff's state law claims contained in the Eighth, Ninth, and Tenth Claims is **GRANTED**; (3) the defendants' motion to dismiss as untimely the Second, Third, and Fourth Claims is **DENIED**; (4) the defendants' motion to dismiss as untimely the Seventh Claim against the City of New York and the Police Commissioner is **DENIED**; (5) the defendants' motion to dismiss the Fifth, Sixth, and Seventh Claims on the grounds of absolute immunity is **DENIED**; (6) the defendants' motion to dismiss the Sixth Claim alleging conspiracy against the individual defendant police officers is **DENIED**; and (7) the plaintiff's motion to compel is **DENIED**.

**SO ORDERED.**