**Leah M. HAYES, Plaintiff,**

v.

**John E. SWEENEY, individually and in his capacity as Commissioner, New York State Department of Labor, and Fredda Peritz, individually, and in her capacity as Director, Community Services Division, New York State Department of Labor, Defendants.**

No. 96–CV–505A.

United States District Court,
W.D. New York.

March 25, 1997.

William A. Price, Buffalo, NY, for Leah M. Hayes.

Melanie Jenkins, State of N.Y., Dept. of Law, New York City, for defendants.

## ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on October 3, 1996. On March 6, 1997, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendants' motion to dismiss be granted with respect to the defamation claim against defendant Sweeney, and denied with respect to the § 1983 claim against defendants Sweeney and Peritz in their individual capacities, the § 1981 claim against defendants Sweeney and Peritz in their official and individual capacities, and the § 1985(3) claim against defendants Sweeney and Peritz in their official and individual capacities. The Magistrate Judge further recommended that the motion to dismiss the defamation claim against defendant Peritz be denied with respect to statements allegedly made in the presence of James Abdou on May 10, 1996 (discussion at IV(B)(2)), and granted with respect to all remaining allegations.

The Court having carefully reviewed the Report and Recommendation, the record in this case, as well as the pleadings and materials submitted by the parties; and no objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's's Report and Recommendation, defendants' motion to dismiss is granted with respect to the defamation claim against defendant Sweeney, and denied with respect to the § 1983 claim against defendants Sweeney and Peritz in their individual capacities, the § 1981 claim against defendants Sweeney and Peritz in their official and individual capacities, and the § 1985(3) claim against defendants Sweeney and Peritz in their official and individual capacities. Further, the motion to dismiss the defamation claim against defendant Peritz is denied with respect to statements allegedly made in the presence of James Abdou on May 10, 1996 (discussion at IV(B)(2)), and granted with respect to all remaining allegations.

The case is referred back to Magistrate Judge Heckman for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Defendants have filed a motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to partially dismiss the complaint (Item 5). For the reasons that follow, it is recommended that defendant's motion be granted in part and denied in part.

### *BACKGROUND*

When considering a motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), this court accepts as true the facts that are alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Plaintiff's allegations are as follows.

Plaintiff is an African–American female who received a bachelor's degree from Hunter College and a master's degree from New York University (¶¶ 14, 21). Sometime prior to March 1987, plaintiff received a competitive civil service appointment with the Department of Labor (DOL) as an Employment Security Placement Trainee (¶¶ 13, 14). In March 1987, plaintiff was promoted to a permanent civil service position as an Employment Security Superintendent. Her promotion to this grade M–4 position was based on a competitive examination (¶ 14). On February 12, 1990, plaintiff was promoted to Community Services Regional Director, a grade M–5 position (¶ 15).

Plaintiff was assigned to manage the DOL's Western Region office, located in Buffalo, New York, until April 25, 1996 (¶¶ 8, 16). During that time she was responsible for ten Community Service Centers located in five Western New York counties (¶ 16). In addition to her regional director duties, plaintiff also directly managed the Buffalo Downtown

Community Service Center's staff of more than 50 persons from July 1 995 until April 25, 1996 (¶ 36). Plaintiff was the only African-American regional director in the DOL.

While plaintiff's employment and promotions were gained through the competitive civil service process rather than by political appointment, plaintiff actively supported the Democratic party, including then-governor Mario Cuomo (¶¶ 18, 19). During the 1994 state election campaign, plaintiff solicited eight DOL employees for work at a telephone bank where they made calls encouraging Democratic party members to vote for the party ticket. All eight employees had volunteered for the telephone bank and none ever complained. However, plaintiff was later reprimanded for improperly soliciting DOL employees to engage in political activities and a "Memorandum of Understanding" with respect to the incident was placed in her personnel file (¶ 18).

Governor Cuomo lost the 1994 gubernatorial election to Republican challenger, George Pataki. After his election, Governor Pataki appointed defendant John E. Sweeney to the position of Commissioner of the DOL. Defendant Sweeney has administrative and supervisory authority over all DOL operations (¶ 10).

Defendant Fredda Peritz was appointed to the position of Director of the Community Services Division by defendant Sweeney. As Director, Defendant Peritz has supervisory authority over the statewide network of Community Service Centers and is the immediate supervisor of the Regional Directors assigned to manage them (¶ 11).

All of the African-American officials in the DOL who ranked higher than plaintiff at that time held the civil service exempt positions of deputy commissioner or program director. By April 1996, all higher-ranking African-Americans had been terminated by defendant Sweeney and plaintiff became the senior African-American official in the DOL statewide. Due to other terminations engineered by defendant Sweeney, no other African Americans besides plaintiff now hold a position in the DOL higher than a grade M–3 (¶ 21).

In late 1995, the Pataki administration began to eliminate regional directors throughout state government who had not supported Governor Pataki in the 1994 election. Regional directors in other state agencies who held noncompetitive positions were terminated outright. In the DOL, however, regional directors held their positions by permanent civil service appointment and could not be removed except for cause (¶ 22). Both defendants knew that plaintiff had worked to re-elect Mario Cuomo (¶ 20). Plaintiff claims that the following actions were taken against her over a three-month period, in part because of her party affiliation and associations and despite the fact that she did not hold a policymaking position (¶¶ 23, 58, 59).

In April 1996, plaintiff received a phone call from defendant Peritz who told plaintiff she was encouraging all DOL Regional Directors age 50 and above to consider an early retirement incentive program in case a future reorganization occurred. Plaintiff was then 51 years old. When plaintiff indicated she would probably not file the prerequisite statement of interest, defendant Peritz urged her to consider the decision carefully even though there were no definite plans to change the current regional organization (¶ 25).

On April 24, 1996, plaintiff was attending a series of work-related meetings in Albany, New York, when defendant Peritz requested that they meet privately. After stating that she had "smelled alcohol" on plaintiff's breath on some prior unspecified occasion, defendant Peritz handed plaintiff information about the state's Employee Assistance Program (EAP), a confidential program for employees who have a problem with drugs or alcohol (¶ 25). Defendant Peritz then instructed plaintiff to contact one of the program coordinators about what she assumed to be a drinking problem and placed plaintiff on administrative leave with pay, effective the following workday (¶ 26). Plaintiff vigorously denied having any problem with excessive drinking or substance abuse and requested that she be allowed to comply with defendant's directive without suspension from her duties. Defendant Peritz declined the request and told plaintiff she would re-

main on suspension until EAP confirmed that she could return to work (¶ 26).

Defendant Peritz cited plaintiff's recent pattern of arriving late to work and leaving early as evidence of alcohol abuse. Plaintiff reminded defendant about their prior discussions and written memoranda regarding her father's recent illness and her involvement in the daily care of her 89 year-old mother. Plaintiff always charged personal leave accruals for her brief absences (¶ 27).

Defendant Peritz also cited an alleged deterioration in plaintiff's job performance, but refused to offer any specifics (¶ 27). According to various statistical measures employed by the DOL, the Western Region office ranked in the top one-half of all regional offices for the months of January through April 1996 (¶ 16). On a later date, when plaintiff again asked for clarification regarding problems with her job performance, defendant Peritz made vague references to "unclear" personnel recommendations (¶ 36).

Later that same day, James Abdou, the DOL's Director of Employee Relations, confirmed plaintiff's suspension and told plaintiff that should she refuse to comply with the EAP mandate, she could be subject to formal charges and disciplinary action. Defendant Peritz denied that these actions were based on a political agenda and claimed her only concern was for plaintiff's health and recovery (¶ 28).

Plaintiff arranged to meet with the Buffalo EAP Coordinator on the following day. She then called her office and informed two staff members that she would be absent for a few days. When plaintiff reported these calls to defendant Peritz, she was told not to contact DOL staff or go to her office (¶ 28).

Though shocked and distraught over defendant Peritz's allegations, plaintiff complied with the EAP mandate, believing that she would face misconduct charges otherwise (¶ 29). Between April 30 and May 13, 1996, plaintiff was referred to BryLin Hospital, a private psychiatric treatment facility in Buffalo. She was required to engage in two intake assessment sessions at the Addiction Treatment Center, two feelings workgroup sessions and one alcohol recovery workgroup session, two counseling sessions with a clinical case worker, daily breathalyzer testing, and blood sampling and testing (¶ 29).

As early as May 8, 1996, the Buffalo EAP coordinator informed defendant Peritz that BryLin was prepared to certify plaintiff as fully able to perform her duties. However, defendant Peritz would not allow plaintiff to return to work until defendants reviewed her blood test results (¶ 30).

Defendant Peritz and James Abdou met with plaintiff on May 10, 1996 for the purpose of clarifying her status. At that time, they assured plaintiff that her blood test results would be analyzed by a competent medical expert. Plaintiff stated that she had complied with defendant Peritz's mandate with the expectation that defendants would accept the EAP and BryLin recommendations regarding her work readiness (¶ 31). In response, defendant Peritz accused plaintiff of lying to BryLin personnel (¶ 32).

Upon plaintiff's further inquiry, defendant Peritz told plaintiff she would not be allowed to return to her job regardless of the blood test results. James Abdou stated that since their initial meeting of April 24th, defendants had received undeniable information that would result in the filing of Article 75 charges against plaintiff (¶ 33). He added that plaintiff held a high-level policymaking position and could no longer be allowed to function without close supervision. Therefore, defendants decided to assign her to another geographic area where she would be closely monitored (¶ 34).

Defendant Peritz told plaintiff she would be assigned to the Finger Lakes Region and would report to the regional director for that area. Plaintiff expressed her fear of unfair treatment because of a history of animosity between that regional director and herself (¶ 35).

Several hours after meeting with plaintiff on May 10, 1996, defendant Peritz directed a part-time EAP Coordinator to meet with the Western Region office staff to report plaintiff's suspension and removal. At least four staff members were present at the meeting, each of whom had been interviewed previously about plaintiff's use of alcohol (¶ 37).

At approximately 1:00 p.m. on the same day, defendant Peritz and James Abdou met with the Western Region's Community Service Center managers at the Western Region office in Buffalo. Defendant Peritz announced that plaintiff was on leave and that she would be reassigned upon her return. In response to a question, defendant Peritz stated that plaintiff was dealing with her issues and that "[i]t's awkward because I can't talk about it" (¶ 38).

On May 14, 1996, defendant Peritz telephoned plaintiff to confirm defendants' decision to reassign her to the Finger Lakes Region. Plaintiff was to be assigned to a region-wide project requiring extensive travel, despite defendants' knowledge that plaintiff's 81 year-old father was dependent on her for daily care (¶ 40). The new assignment was conditioned upon plaintiff's release from BryLin supervision (¶ 41).

On May 20, 1996 or immediately thereafter, defendants received from BryLin Hospital a letter summarizing its five-part evaluation of plaintiff. The letter concluded with the determination that treatment was not recommended at that time (¶ 42). No later than May 20, 1996, defendants also received plaintiff's blood analysis from BryLin, which demonstrated the absence of any alcohol or drug abuse problems (¶ 43).

On May 29, 1996, plaintiff and her Albany attorney met with James Abdou in an effort to avoid the Article 75 charges threatened by defendants. Mr. Abdou questioned plaintiff about her frequent lateness in 1996, when she often arrived in the office at approximately 9:30 a.m. Plaintiff again explained the medical and domestic needs of her elderly parents and noted that she had notified defendant Peritz of the situation verbally and in writing. She also noted that she had charged leave accruals for any late arrivals (¶ 45).

Despite plaintiff's documentation of absences and the determination by BryLin and EAP that she did not have an alcohol problem, defendants issued Article 75 misconduct charges against her on June 3, 1996 (¶ 46). Charge I alleged that from April 1995 to April 1996, plaintiff repeatedly presented herself at work after having consumed alcohol and that she consumed alcohol in the workplace. Defendants have not provided any specific incidents or specific evidence to support the allegations (¶ 47).

Shortly thereafter, on June 1 3, 1996, defendants restructured the DOL regional office network, reducing the number of regions from nine to six. The Western Region was consolidated with the Finger Lakes Region under the Finger Lakes Regional Director. Two regions, each comparable in size to the former Western Region, were retained intact. Because some regional directors opted for retirement, no incumbent remained unassigned to a regional director position except plaintiff (¶ 51). Defendants have failed to consider plaintiff for a vacant regional director position in Long Island, despite the fact that she holds preferred appointment rights due to her permanent civil service classification (¶ 52).

In sum, plaintiff alleges that defendants sought to force her early retirement or resignation and ultimately eliminated her job. She states that these actions were taken in retribution for her political affiliation and associations, and were also motivated by racial discrimination. As a result of defendants' conduct, plaintiff claims that she has been deprived of employment and career opportunities, has lost self-esteem and personal dignity, and has suffered continuing damages from humiliation and mental anguish.

On July 31, 1996, plaintiff commenced this action claiming: (1) that defendants violated the Civil Rights Act of 1871, 42 U.S.C. § 1983, when they deprived her of her first and fourteenth amendment rights to exercise her freedom of political affiliation and association without interference with her employment opportunities, (2) that defendants intentionally discriminated against her in her employment on the basis of her race in violation of 42 U.S.C. § 1981, (3) that defendants conspired to deprive her of her first and fourteenth amendment rights in violation of 42 U.S.C. § 1985(3), and (4) that defendants made defamatory statements with the intent to injure her good name, character and integrity, professional reputation and career

prospects. Plaintiff is seeking declaratory, injunctive, and monetary relief.

On September 30, 1996, defendants filed a motion to partially dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants are seeking dismissal of (1) the § 1983 claim against both defendants in their individual capacities, (2) the § 1981 claim against both defendants in their individual and official capacities, (3) the § 1985(3) claim against both defendants in their individual and official capacities, and (4) the state law defamation claim against both defendants in their individual and official capacities.

## DISCUSSION

### I. RIGHT TO POLITICAL EXPRESSION AND ASSOCIATION—42 U.S.C. § 1983.

Plaintiff alleges that defendants violated her first and fourteenth amendment rights when they initiated a series of adverse employment actions against her in retaliation for her political affiliation and associations. Plaintiff is seeking monetary damages from the individually-named defendants, Sweeney and Peritz.

Defendant Sweeney argues that dismissal of the § 1983 claim against him in his individual capacity is appropriate because the complaint fails to state that he was personally involved in the alleged violations. In addition, defendants Sweeney and Peritz seek dismissal of the § 1983 claim against them in their individual capacities on the ground that they are protected by qualified immunity. Their arguments are discussed in turn.

### A. Failure to Allege Personal Involvement.

■ It is well-settled that defendant's personal involvement in the alleged constitutional violations is a prerequisite to an award of monetary damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). Where a defendant is employed in a supervisory capacity, personal involvement can include: (1) direct participation in the alleged violation, (2) failure to remedy the wrong after learning of it, (3) creation or mainte-

nance of a policy or custom under which unconstitutional practices occurred, (4) gross negligence in supervising subordinates who committed the unconstitutional acts, and (5) exhibiting deliberate indifference by failing to act on information indicating that constitutional violations were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995). A § 1983 claim is properly dismissed where the plaintiff alleges nothing more than that defendant was in charge of the agency. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987).

Defendant Sweeney does not dispute that, as Commissioner of the Department of Labor, he exercises administrative and supervisory authority over all DOL operations. He does argue, however, that the complaint fails to allege his "personal involvement" in employment actions taken against plaintiff.

■ In her complaint, plaintiff alleges that defendant Sweeney terminated some DOL employees and engineered the termination of others who held positions at grade M–4 and higher (¶ 21). Thus it is alleged that Sweeney has been directly involved in DOL personnel actions affecting positions at plaintiff's level of employment. Plaintiff further alleges that in 1995, the Pataki administration began to systematically eliminate officials at the regional director level throughout state government who had not supported Governor Pataki in the 1994 election (¶ 22). While defendant Sweeney is not specifically named with respect to this statewide action, the reasonable inference is that, as Commissioner of a state agency, he was at least aware of this action and may have been responsible for its implementation at the DOL. Plaintiff goes on to specify the particular employment actions taken against her in an effort to force her early retirement or resignation (¶¶ 23–52). In particular, she claims that *defendants* decided to transfer her (¶¶ 34, 41), *defendants* issued Article 75 misconduct charges against her (¶ 46), *defendants* restructured the DOL regional office network and eliminated her position (¶ 51), and *defendants* failed to consider her for a vacant Regional Director position elsewhere (¶ 52).

Thus, the complaint does not merely assume defendant Sweeney's personal involvement based on his position of authority.

There are specific allegations stating that all named defendants were directly involved in certain employment actions taken against plaintiff. In particular, plaintiff alleges that defendant Sweeney "authorized, sanctioned, encouraged and perpetuated all the conduct alleged herein" (¶ 53). These allegations are at least sufficient to require a trial on defendant Sweeney's role in the events alleged.

Accordingly, defendant Sweeney's motion to dismiss the claim against him in his individual capacity on the ground that plaintiff failed to allege his personal involvement must be denied.

## B. Qualified Immunity.

Defendants Sweeney and Peritz move to dismiss the complaint against them in their individual capacities on the ground of qualified immunity. Government officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990)).

■ The first amendment forbids government officials from engaging in adverse employment actions against a public employee because of his or her party affiliation, unless the employee holds a policymaking position for which party affiliation and loyalty is an appropriate job requirement. *See Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2d Cir. 1994). Thus, a clearly established right is at stake in this case.

■ Defendants do not dispute plaintiff's claim that she suffered a deprivation of her rights. Instead, they argue that their alleged conduct regarding plaintiff's employment was objectively reasonable. Defendants first assert that so long as they believed that their conduct regarding plaintiff's personnel issues did not violate her rights, their beliefs must have been reasonable (Item 6, p. 16; Item 10, p. 5). This reasoning avoids a fact-based inquiry and implies that the standard for assessing defendants' conduct is one of good faith. As stated above, the standard is objective reasonableness, and a defendant is entitled to immunity only if officials of reasonable competence could disagree as to the legality of the defendant's actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). Defendants assertions as to their own beliefs are not relevant to this inquiry.

Defendants go on to claim that their alleged conduct can "be perceived as objectively reasonable steps taken by supervisors upon discovering a possible severe workplace violation—alcohol consumption during working hours" (Item 10, p. 6). To prevail on a Rule 12(b)(6) motion to dismiss, defendants must be able to support this argument solely on plaintiff's version of the facts. *Salim v. Proulx*, 93 F.3d 86, 90–91 (2d Cir.1996).

Plaintiff alleges that defendants brought disciplinary charges against plaintiff, announced her transfer, eliminated her position, and refused to consider her for a comparable position, after receiving medical evidence that their suspicions about plaintiff were incorrect. She also alleges that the accusations of alcohol abuse were part of an effort to force her retirement or resignation because of her political activities.

In *Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996), the Second Circuit recently suggested that considering the qualified immunity defense as grounds for dismissal on the pleadings is "premature" because, among other reasons, it is the defendants' burden to raise the qualified immunity defense in their answer and establish it at trial or on a motion for summary judgment. *Id.* at 75–76. However, the court did indicate that entitlement to the qualified immunity defense can be established as a matter of law "in appropriate cases...." *Id.* at 76 (quoting *Young v. Selsky*, 41 F.3d 47, 52 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995)).

This is not an "appropriate case" for such a finding. The qualified immunity defense cannot be established on the pleadings alone where an unconstitutional motive is alleged. *See Sheppard v. Beerman,* 94 F.3d 823, 828 (2d Cir.1996); *Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995). Further, accepting plaintiff's allegations as true, I cannot find as a matter of law that defendants could have reasonably believed their conduct was lawful in light of clearly established law and the information they possessed. *See Castro v. U.S.,* 34 F.3d 106, 112 (2d Cir.1994) (citing *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

Accordingly, defendants' motion to dismiss the § 1983 claim against them on the ground that they are protected by qualified immunity must be denied.

## II. RACIAL DISCRIMINATION—42 U.S.C. § 1981.

Plaintiff alleges that defendants deprived her of her constitutional rights when they intentionally discriminated against her in her employment because of her race. *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Defendants move to dismiss the § 1981 claim against them on the ground that the complaint is vague and conclusory and fails to allege sufficient facts to show a civil rights violation.

> [U]nder § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under 12(b)(6).

*Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993). In other words, there must be fact-specific allegations of a causal link between defendant's conduct and plaintiff's race. *See Albert v. Carovano,* 851 F.2d 561, 572–73 (2d Cir.1988).

### A. Claim Against Defendant Sweeney.

Defendant Sweeney argues that the complaint fails because there are no allegations that he was personally involved in any personnel decisions regarding the plaintiff. As determined above, the complaint sufficiently alleges that defendant Sweeney was involved in the decisions to transfer plaintiff, initiate disciplinary proceedings against her, and eliminate her position, as well as the refusal to consider plaintiff for a vacant regional director position.

Even so, defendant argues that the complaint fails to allege any circumstances giving rise to a plausible inference of his racially discriminatory intent. Upon reviewing the complaint, I find this assertion to be incorrect.

Plaintiff states that she was the only African–American regional director in the DOL. When the regional offices were restructured, she alleges that she was treated differently than her white colleagues in several respects. First, while the Western Region was consolidated in the restructuring, eliminating plaintiff's position, a region of comparable size with a white director was maintained intact (Item 1, ¶ 51). Also, when the Western Region was consolidated with another, the white director of the second region received the director's position *(Id.).* Though the total number of regions was reduced, some openings existed because of retirements, and all incumbent regional directors except plaintiff were reassigned *(Id.).* Finally, defendants failed to consider plaintiff for a vacant regional director position in Long Island (Item 1, ¶ 52).

Plaintiff alleges that these adverse employment actions were motivated, in part, because of her race (Item 1, ¶¶ 69–71). While a complaint cannot be sustained on this assertion alone, where a plaintiff in addition sets forth facts upon which the court could find a violation of the Civil Rights Acts, he or she succeeds in stating a claim under Rule 12(b)(6). *Yusuf, supra,* 827 F.Supp. at 955 (quoting *Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978)). Plaintiff has alleged specific instances of disparate treatment suggesting that she has been singled out. *Blue, supra,* 72 F.3d at 1084. Therefore, she has sufficiently pleaded facts upon which a civil rights violation could be found.

Accordingly, defendant Sweeney's motion to dismiss the § 1981 claim against him in his official capacity must be denied.

### B. Claim Against Defendant Peritz.

Defendant Peritz claims that the complaint against her must fail because the termination of all higher-ranking African–Americans does not give rise to an inference that defendant Peritz's actions were racially motivated.

However, plaintiff alleges that both of the named defendants participated in the disciplinary actions against her, her transfer, and the elimination of her position. Plaintiff also alleges that both defendants treated her adversely because she is African–American. As stated above, a claim of discriminatory motive, accompanied by the specific allegations of disparate treatment provided here, is sufficient to survive a motion to dismiss.

Plaintiff states that when defendant Peritz accused her of alcohol abuse, Peritz denied any political motivation and expressed concern over plaintiff's health. Defendant now seeks to present this statement as proof of a nondiscriminatory intent. However, this self-serving statement is insufficient to counter plaintiff's factual allegations. In addition, this argument ignores the fact that defendant Peritz's subsequent employment actions regarding plaintiff were taken after defendant received a medical report indicating that plaintiff did not have an alcohol problem.

Accordingly, defendant Peritz's motion to dismiss the § 1981 claim against her in her official capacity must be denied.

### C. Qualified Immunity.

Again, defendants Sweeney and Peritz claim that they are immune from liability in their individual capacities.

As with the § 1983 claim discussed above, plaintiff's § 1981 claim alleges a violation of a clearly established constitutional right. Defendants, who combined their argument on these two claims with respect to qualified immunity, argue that their employment actions with respect to plaintiff were objectively reasonable.

There is no need to restate the facts and conclusions drawn above. Plaintiff alleges that she was treated differently than her white colleagues. She states that this treatment continued despite the BryLin assessment regarding her job readiness. She also alleges an unconstitutional intent. For the reasons stated above, plaintiff's allegations preclude a finding of qualified immunity at this stage with respect to the § 1981 claim against defendants.

### III. CONSPIRACY—42 U.S.C. § 1985(3)

Section 1985(3) provides a remedy for persons who have been intentionally deprived of any constitutional rights or privileges by the conspiracy of two or more persons.

> The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of person of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087–88 (1993) (citing *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–57, 77 L.Ed.2d 1049 (1983)).

A complaint containing only conclusory, vague, or general allegations that the defendants engaged in a conspiracy to deprive the plaintiff of his rights is insufficient to survive a motion to dismiss. *Crespo v. New York City Police Com'r,* 930 F.Supp. 109, 118 (S.D.N.Y.1996) (citations omitted). Plaintiff must allege some facts from which the existence of a conspiracy could be inferred. *Id.* That is, plaintiff must allege that defendants engaged in acts that are reasonably related to promoting the claimed conspiracy. *Birnbaum v. Trussell,* 347 F.2d 86, 89 (2d Cir.1965).

Defendant argues that plaintiff has failed to allege any specific facts that would allow a reasonable inference of conspiracy. Specifically, there is no allegation that defen-

dants Sweeney and Peritz were in contact regarding plaintiff. Also, while plaintiff refers generally to "defendants' acts" with respect to plaintiff, there is no allegation of an agreement between them. Thus, defendants appear to suggest that what is required is some direct evidence of a conspiracy as opposed to factual allegations from which a conspiracy can be inferred.

Plaintiff alleges that defendants Sweeney and Peritz conspired to deprive plaintiff of her rights under the first and fourteenth amendments and that defendants conducted a three-month long campaign to force her termination in furtherance of their conspiracy. As detailed above, plaintiff alleges specific instances in which the defendants acted together with respect to her employment and states how she was treated differently than other employees because of her race. Thus, she has sufficiently alleged the existence of a conspiracy, racial animus, and specific overt acts in furtherance of the alleged conspiracy.

Accordingly, defendants' motion to dismiss the § 1985(3) claim against them must be denied.

## IV. DEFAMATION—SLANDER *PER SE.*

Under New York law, the elements of defamation, either libel or slander, include: (1) a false and defamatory statement of fact, (2) regarding the plaintiff, (3) the publication of the written or oral statements to a third party, and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Robinson v. Town of Colonie,* 878 F.Supp. 387, 408 (N.D.N.Y.1995); *Christopher Lisa Matthew Policano, Inc. v. North American Precis Syndicate, Inc.,* 129 A.D.2d 488, 514 N.Y.S.2d 239 (1st Dep't 1987).

Whether particular spoken or written statements are reasonably susceptible to a defamatory meaning is a question of law for the court to determine in the first instance. *Yesner v. Spinner,* 765 F.Supp. 48, 51 (E.D.N.Y.1991); *Weiner v. Doubleday & Co.,* 74 N.Y.2d 586, 592, 550 N.Y.S.2d 251, 549 N.E.2d 453 (1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 498 (1990).

Statements that tend to disparage or injure plaintiff in her trade or profession are slanderous or libelous *per se. Davis v. Ross,* 754 F.2d 80, 82 (2d Cir.1985); *Liberman v. Gelstein,* 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *Nichols v. Item Publishers,* 309 N.Y. 596, 600, 132 N.E.2d 860 (1956). Where the statements are defamatory *per se,* the law presumes that damages will result and they need not be alleged. *Weldy, supra,* 985 F.2d at 61–62.

Plaintiff claims that defendants, acting in their individual capacities, made the following statements against her that are slanderous *per se:*

1. In a private meeting between defendant Peritz and plaintiff held on April 24, 1996, Peritz accused plaintiff of having a drinking problem and suspended her from her position stating, "if you could control the problem, you would have already done so" (¶ 25, 26). Peritz then directed plaintiff to "republish" the allegation to an EAP counselor (¶ 26).

2. On April 24, 1996, James Abdou, the DOL Employee Relations Director, confirmed that by direction of defendant Peritz, plaintiff was suspended with pay until she complied with EAP assessment and treatment requirements (¶ 28). Plaintiff infers that defendant Peritz must have made statements to James Abdou that were similar to those made to plaintiff. On May 10, 1996, defendant Peritz accused plaintiff of lying to BryLin personnel in the presence of James Abdou, stating that, "[i]f you told them the truth, they would assign you to a day treatment program" (¶ 31, 32).

3. On May 10, 1996, defendant Peritz had an EAP Coordinator meet with four Western Region staff members to report on plaintiff's suspension. Each staff member had previously been interviewed about plaintiff's use of alcohol. Though no mention was made of plaintiff's problems, the presence of an EAP coordinator implied that plaintiff had a substance abuse problem (¶ 37).

4. Defendant Peritz met with Western Region managers to "respond to rumors regarding [plaintiff's] situation" (¶ 38). Though no mention was made of her alleged alcohol

abuse, plaintiff claims such an understanding was inferred from the circumstances (¶ 39).

### A. Claim Against Defendant Sweeney.

■ The complaint does not allege that defendant Sweeney made any oral statements about plaintiff, nor can such a claim be reasonably inferred from the pleading. Accordingly, the slander claim against defendant Sweeney must be dismissed.

### B. Claim Against Defendant Peritz.

Defendant Peritz argues that her statements were not defamatory, that they caused no harm to plaintiff in her profession and therefore were not slanderous *per se,* and that, in any event, she is protected by absolute immunity.

#### 1. Compelled Self–Defamation.

Plaintiff claims that she was compelled to publish defamatory statements to an EAP counselor.

■ As a general rule, an allegedly defamatory statement has not been "published" if the statement was exposed to a third party by the person claiming to be defamed. *Church of Scientology of California, Inc. v. Green,* 354 F.Supp. 800, 804 (S.D.N.Y.1973) (citations omitted). However, an exception to this general rule is emerging in cases where the defamed person is *compelled* to publish the statement to a third party. *Mendoza v. SSC & B Lintas, New York,* 799 F.Supp. 1502, 1512 (S.D.N.Y.1992).

■ This court observed in a previous decision that New York courts had not addressed the availability of this exception. *Chrzanowski v. Lichtman,* 884 F.Supp. 751 (W.D.N.Y.1995). That is still the case today. However, the Western District, applying New York law, has recognized a claim of self-defamation. *Weldy v. Piedmont Airlines,* 1989 WL 158342 (W.D.N.Y. Dec.22, 1989) (Elfvin, J.).

In *Weldy,* the plaintiff was told that he was fired for attempted assault upon a co-worker. The plaintiff maintained that this statement was false and that no altercation had taken place. He sued for defamation claiming that

he was compelled to reveal to prospective employers the stated reason for his termination. *Id.* at *2–4.

As Judge Elfvin noted in his decision, the self-defamation exception has been applied most frequently in cases similar to *Weldy,* that is, where the defamatory statement was made as a basis for the plaintiff's termination and plaintiff was required to relate the statement at a subsequent job interview with another employer. *Id.* at *5. In order to establish such a claim, the party must show "compulsion upon plaintiff to republish and the foreseeability of such to the defendant." *Id.* at *4.

The present case is clearly distinguished from the cases considered by Judge Elfvin. Plaintiff was never terminated from her position. In fact, plaintiff states that she felt "compelled" to disclose defendant Peritz's allegation as a means of preserving her employment (¶ 29). In sum, the complaint fails to allege that defendant's statement caused plaintiff damage as contemplated in the body of caselaw on this issue. *See McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 797–98, 168 Cal.Rptr. 89, 94 (1st Dist.1980). Plaintiff's own discomfort at having to endure an EAP assessment is insufficient to state a claim.

Accordingly, the slander claim against defendant Peritz based on plaintiff's self-defamation must be dismissed.

#### 2. Statements heard by James Abdou.

Plaintiff claims that it can be inferred that defendant Peritz made defamatory statements to James Abdou on or about April 24, 1996. This off-handed allegation is insufficient to state a claim that defendant made any defamatory statement of fact regarding the plaintiff.

Plaintiff also claims that on May 10, 1996, in a meeting at which plaintiff, defendant Peritz, and James Abdou were present, defendant Peritz characterized plaintiff as a liar and in need of treatment. This statement was made during a meeting at which plaintiff's medical assessment for alcohol abuse was discussed.

New York courts have determined that an imputation of alcohol consumption is defamatory when accompanied by some aggravating factor, such as the suggestion that conduct is habitual or that the person is "a drunk." *Alvarado v. K–III Magazine Corp.*, 203 A.D.2d 135, 136–37, 610 N.Y.S.2d 241, 243 (1st Dep't 1994) (citations omitted). However, "[i]t is not actionable *per se* to charge a man orally with being drunk or in the habit of getting drunk, unless drunkenness is an indictable offense or unless the charge touches the plaintiff in some office, profession, or occupation in which drunkenness is a disqualification or tends to constitute incapacity...." *Morrison v. News Syndicate Co.*, 247 A.D. 397, 287 N.Y.S. 451 (1st Dep't 1936); *see also, Wachtel v. Storm*, 796 F.Supp. 114, 116 (S.D.N.Y.1992).

Under this standard, defendant Peritz's statement that plaintiff should be assigned a treatment program for her problem suggests habitual or uncontrolled conduct that is reasonably susceptible to a defamatory meaning. The question remaining is whether plaintiff sufficiently states a claim for slander *per se*. Plaintiff alleges that at that same meeting, she was told she would not be able to return to her regional director position because she "could no longer be allowed to function without close supervision" (¶ 34). In total, the statements made at this meeting infer that plaintiff had an alcohol problem that affected her ability to perform her job.

Accordingly, plaintiff has stated a claim for slander *per se* sufficient to survive a motion to dismiss with respect to statements made in the presence of James Abdou on May 10, 1996.

### 3. EAP Coordinator's Meeting with Plaintiff's Staff.

Plaintiff does not allege that any words spoken during this meeting are susceptible to a defamatory meaning. However, plaintiff urges that, in view of surrounding events and circumstances, a defamatory message was conveyed by the EAP coordinator's presence.

A slander claim involves a defamatory statement of fact. In order to ascertain whether particular words or phrases are susceptible to a defamatory meaning, a court may look at the statement in its entirety to examine the context in which the words were used. *Vacca v. General Electric Credit Corporation*, 88 A.D.2d 740, 451 N.Y.S.2d 869 (3rd Dep't 1982); *Nowark v. Maguire*, 22 A.D.2d 901, 255 N.Y.S.2d 318 (2d Dep't 1964).

This court can find no support for plaintiff's assertion that a statement's "context" involves nonverbal conduct or events from which slander can be implied. Plaintiff does not allege that a defamatory statement was made. In addition, there is no allegation that defendant Peritz spoke at or even attended the meeting in question. Further, the inferences allegedly drawn by staff members can in no way be construed as having been derived from a statement of fact.

Accordingly, this claim for slander against defendant Peritz must be dismissed.

### 4. Peritz's Meeting with Western Region Managers.

Plaintiff states that defendant Peritz met with managers and informed them that plaintiff was on leave and would be on special assignment in another geographic area when she returned. Plaintiff does not allege that defendant Peritz made any reference to alcohol at this meeting.

Plaintiff alleges that defendant Peritz's remarks, coupled with the EAP coordinator's meeting with staff, left staff members and managers with the impression that plaintiff had been removed from her position because of a substance abuse problem.

Again, plaintiff attempts to argue that a defamatory message was conveyed through a combination of nondefamatory statements and nonverbal conduct or circumstances. For the reasons stated above, I find this argument unpersuasive and this claim for slander against defendant Peritz must be dismissed.

### C. Absolute Immunity.

Defendant argues that, under New York law, a public actor is entitled to absolute immunity with respect to actions involv-

ing the exercise of discretion even if resulting from negligence or malice. *Tango v. Tulevech,* 61 N.Y.2d 34, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983). However, with respect to a claim of defamation, the Court of Appeals has specifically held that:

> [U]nless an official is a principal executive of State or local government or is entrusted by law with administrative or executive policy-making responsibilities of considerable dimension, policy considerations do not require that he be given an absolute license to defame.

*Stukuls v. State of New York,* 42 N.Y.2d 272, 278, 397 N.Y.S.2d 740, 366 N.E.2d 829 (1977) (holding that university president's publication of allegedly defamatory letter concerning teacher to the faculty evaluation committee considering tenure was not entitled to absolute privilege).

In reaching its holding in *Stukuls,* the court indicated that, where defamation is alleged, New York reserves absolute immunity for those at the highest echelons of government, with the defense of qualified privilege available to other officials where appropriate. *Id.* at 276–78, 397 N.Y.S.2d 740, 366 N.E.2d 829.

There is no indication in the pleadings that defendant Peritz holds a position that entitles her to the absolute immunity defense. Defendant's brief merely raises a factual question that cannot be resolved on a motion to dismiss.

### *CONCLUSION*

For the foregoing reasons, it is recommended that defendant's motion to dismiss (**Item 5**) be GRANTED with respect to the defamation claim against defendant Sweeney, and DENIED with respect to the § 1983 claim against defendants Sweeney and Peritz in their individual capacities, the § 1981 claim against defendants Sweeney and Peritz in their official and individual capacities, and the § 1985(3) claim against defendants Sweeney and Peritz in their official and individual capacities. It is further recommended that the motion to dismiss the defamation claim against defendant Peritz be DENIED with respect to statements allegedly made in the presence of James Abdou on May 10, 1996

(discussion at IV(B)(2)) and GRANTED with respect to all remaining allegations.

DATED: Buffalo, New York. March 6, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,**that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3). or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order). may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

DATED: Buffalo, New York.

March 6, 1997.