**Raleigh L. HARRIS, Plaintiff,**

v.

**AMERICAN PROTECTIVE SERVICES OF NEW YORK, INC., Defendant.**

**No. 97–CV–6056L.**

United States District Court,
W.D. New York.

March 27, 1998.

Raleigh L. Harris, Rochester, NY, Edward J. Leichtner, Law Office of Edward J. Leichtner, Rochester, NY, for plaintiff.

Linda H. Joseph, Buchanan Ingersoll, P.C., Buffalo, NY, Ginger D. Schroder, Buchanan Ingersoll, P.C., Buffalo, NY, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff, Raleigh L. Harris ("Harris"), filed the instant complaint against defendant American Protective Services of New York, Inc. ("APS") alleging claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et al. ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"). Harris alleges that APS discriminated against him on the basis of race, sex and disability. Harris also alleges retaliation, sexual harassment, and defamation.

APS filed a motion to dismiss Harris' complaint on April 18, 1997. Thereafter, Harris filed several motions including a motion to amend his complaint to add causes of action for wrongful termination and perjury, a motion to have the arbitrator's decision vacated, and a motion for a preliminary injunction.[1] For the reasons discussed, infra, Harris' motions are denied, and APS' motion is granted, in part, and denied, in part.

### FACTS

At the time of the incidents in question, Harris was employed by APS as a security guard and was stationed at the Bausch and Lomb corporate office building in Rochester, New York. On January 24, 1996, Harris filed an incident report against Virgen Martinez ("Martinez"), a female employee of APS, relating to an incident that occurred between them while both were on duty on January 24, 1996. Harris claims that Martinez entered the console where Harris was posted as a security guard, reached over his body, bumping him, and grabbed a set of keys to a "lock box."[2] Harris states that he informed Martinez that it was his duty as console officer to escort her to the lock box and to have her sign a log indicating that she had returned the keys. According to Harris, Martinez responded by telling Harris "whatever" and "kiss my ass."

At about the same time as the incident described by Harris, Martinez complained to her manager about inappropriate sexual comments that Harris made to her.[3] An investigation into Martinez' complaint was made, during which time Harris was placed on "administrative hold" status pending resolution of the complaint. Although Harris was told not to report to work, he did receive full pay and benefits during this period. APS ultimately determined that it was unable to substantiate Martinez' allegations of sexual harassment.

Harris claims that when he was called back to work in March 1996 after he was "cleared" of the sexual harassment charge,

---

1. Harris' motion for a preliminary injunction relates to APS' efforts to regain possession of Harris' security guard uniform.

2. "Lock box" is not defined by the parties.

3. It is not clear from Harris' complaint exactly when Martinez filed a claim of sexual harassment against him. Harris' EEOC charge states that "prior to January 31" Martinez complained of sexual harassment.

he was informed that he would not be permitted to return to the Bausch and Lomb site but would be used as a "floater." According to Harris, the several different site options APS offered him were inferior to the Bausch and Lomb site in that they were more physically demanding. Harris claims that, due a pre-existing knee injury, he was unable to accept work at the sites offered.

On March 26, 1996, Harris filed a charge with the New York State Division of Human Rights, alleging that he was treated differently than Martinez based on gender. In particular, Harris claimed that: Martinez' allegations of sexual harassment were investigated and his were not; Martinez was not put on hold during the investigation and he was; Martinez remained in the same position while he was reassigned. His complaint was dismissed by the Division of Human Rights and by the EEOC after the parties had agreed to submit the claims to arbitration.

Following a hearing, the arbitrator found that APS did not unlawfully discriminate against Harris on the basis of gender and that Martinez did not sexually harass Harris.

## DISCUSSION

### I. APS' Motion to Dismiss

#### A. Standards on Motion to Dismiss

As an initial matter, APS has mischaracterized that part of its motion concerning Harris' failure to file an administrative charge as a motion to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1). "It is well established ... that filing a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court—rather it is a condition precedent and 'like a statute of limitations, is subject to waiver, estoppel and equitable tolling.'" *Angotti v. Kenyon & Kenyon,* 929 F.Supp. 651, 653 (S.D.N.Y.1996), quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Therefore, I will treat APS' entire motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Harris initially brought this action *pro se.*[4] Generally, *pro se* complaints are held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989), quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In addition, when considering a defendant's motion to dismiss, a court must accept the plaintiff's allegations as true and resolve competing inferences in his favor. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

The burden on the defendant in a motion to dismiss is onerous. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

"When determining the sufficiency of [a plaintiff's] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] ... complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which [plaintiff] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

#### B. Failure to File EEOC Charge: Disability, Race, Retaliation and Sexual Harassment Claims

##### 1. Race and disability discrimination

APS claims that Harris has failed to exhaust his administrative remedies with respect to his race and disability claims because he did not raise the claims in his charge filed with the EEOC.

"A district court only has jurisdiction to hear Title VII claims that either are included

4. Harris is now represented by counsel.

in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing Preservation and Development,* 990 F.2d 1397, 1401 (2d Cir.1993); *Stewart v. INS,* 762 F.2d 193, 198 (2d Cir. 1985). A claim of discrimination is reasonably related to a charge filed with the EEOC if: a) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; or b) the claim alleges retaliation by the employer against an employee for filing an EEOC charge; or c) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts,* supra at 1402–1403. Of these three circumstances only one could potentially apply here and that is the first one, which is essentially an allowance for "loose pleadings."

Even considering the allowance for "loose pleadings," to allow Harris' race and disability discrimination claims to go forward "would clearly frustrate the essential purpose of the statutory exhaustion requirement—giving the EEOC the opportunity to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance." *Spurlock v. NYNEX,* 949 F.Supp. 1022, 1030 (W.D.N.Y.1996) (dismissing disability discrimination claim where EEOC charge only mentioned race discrimination). Harris' allegations of race and disability discrimination contained in his complaint were not part of the charge filed with the EEOC. The administrative charge filed by Harris contains absolutely no reference to race or disability discrimination. There is simply nothing in the EEOC charge or Harris' complaint that suggests that the EEOC could reasonably have been expected to investigate claims of this nature.

■ Further, Harris' race and disability discrimination claims are wholly different types of discrimination than the claim of disparate treatment sex discrimination Harris alleged in his EEOC charge. "[C]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge." *Peterson v. Insurance Co. of N. America,* 884 F.Supp. 107, 109 (S.D.N.Y.1995). See *McKinney v. Eastman Kodak Co.,* 975 F.Supp. 462, 466 (W.D.N.Y. 1997) (motion to amend complaint to add claims of sex discrimination and Family and Medical Leave Act violations denied as futile where EEOC charge alleged only age discrimination and retaliation for complaining about age discrimination); *Mathura v. Council for Human Services Home Care Services, Inc.,* 1996 WL 157496 (S.D.N.Y. Apr.2, 1996) (sex discrimination claim not reasonably related to race discrimination claim), *aff'd,* 107 F.3d 3 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 93, 139 L.Ed.2d 49 (1997); *Nelson v. Cigna,* 1995 WL 848514 (D.Conn. Dec.7, 1995) (race and sex discrimination claims not reasonably related to age and disability discrimination claims); *Dennis v. Pan American World Airways, Inc.,* 746 F.Supp. 288, 291 (E.D.N.Y.1990) (age discrimination claim under ADEA dismissed where plaintiff's EEOC charge asserted only racial discrimination); *Kawatra v. Medgar Evers College of the City Univ. of N.Y.,* 700 F.Supp. 648, 654 (E.D.N.Y.1988) (marital status discrimination claim not reasonably related to plaintiff's charges of sex and national origin discrimination with the EEOC); *McPartland v. American Broadcasting Companies, Inc.,* 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (plaintiff's age discrimination claim dismissed where her EEOC charge only mentioned sex discrimination, harassment, retaliation and discriminatory discharge).

Thus, because Harris' race and disability discrimination claims were not raised in his EEOC charge and are not reasonably related to that charge, those claims are hereby dismissed with prejudice.

### 2. Retaliation claim

■ APS also argues that Harris' retaliation claim should be dismissed because it was neither raised in, nor is reasonably related to, Harris's EEOC charge. In general, claims that an employer retaliated against an employee who has opposed discrimination may be reasonably related to allegations in

the employee's EEOC charge. "The reasonably related rule has been broadly construed to allow judicial redress for most retaliatory acts arising *subsequent to* an EEOC filing ..." *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1209 (2d Cir.1993) (emphasis added). The problem in the instant action is that Harris fails to allege any retaliatory actions by APS that occurred subsequent to his EEOC charge. In his complaint, Harris alleges that, although Martinez' sexual harassment claim was not proven, "the company retaliated against me by transferring me to other sites ..." Not only is it unclear what protected activity Harris was engaged in that provoked the alleged retaliation, the alleged retaliatory acts, i.e., transfers to different work sites, occurred prior to Harris' EEOC filing.

In his memorandum of law, Harris contends that the protected activity was Harris' filing of the EEOC charge and the retaliation to which he is referring occurred when APS notified Harris that it had no other sites to offer him, which notification allegedly occurred subsequent to his EEOC filing. The problem here is that this claim does not appear anywhere in Harris' complaint. As it is currently drafted, Harris' retaliation claim must be dismissed with leave to replead.

### 3. Sexual harassment claim

■ APS argues that Harris failed to include a claim of sexual harassment in his EEOC charge and, thus, this claim must also be dismissed for failure to exhaust administrative remedies. It is true that Harris did not specifically claim, in his EEOC charge, that he had been sexually harassed. Harris' EEOC charge did, however, include a description of the January 24, 1996 incident with Martinez in which Martinez said to Harris "kiss my ass." Additionally, Harris claims that he received disparate treatment, in part, because Martinez's claim of sexual harassment against Harris was investigated while his complaint against Martinez was not investigated. An investigation into the January 24, 1996 incident which gave rise to Harris' incident report that he filed against

Martinez would reasonably be expected to grow out of his EEOC charge. Additionally, it is clear that Harris' claim of sexual harassment was considered by the arbitrator inasmuch as his decision specifically found that Martinez did not sexually harass Harris. Thus, I find that the sexual harassment claim in Harris' complaint is reasonably related to his EEOC charge and is not subject to dismissal for failure to exhaust administrative remedies.[5]

### C. Failure to State a Claim: Disparate Treatment, Sexual Harassment and Defamation

#### 1. Disparate Treatment

APS argues that Harris' disparate treatment sex discrimination claim should be dismissed for failure to state a claim. The burden on the defendant in a motion to dismiss, however, is onerous. The Supreme Court has articulated the court's role on a Rule 12 motion:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims. Indeed it may appear on the face of the complaint that a recovery is very remote and unlikely but that is not the test. *Scheuer,* 416 U.S. at 236.

■ "It is well-established that to state a disparate treatment claim under Title VII the plaintiff must demonstrate 1) that [he] belongs to a protected class; 2) that [he] suffered adverse employment action; and 3) the adverse employment action occurred 'in circumstances giving rise to an inference of [sex] discrimination.'" *Yaba v. Roosevelt,* 961 F.Supp. 611, 617–18 (S.D.N.Y. 1997), quoting *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464 (2d Cir.1989).

■ In the present case, because plaintiff alleges that he is male, the complaint alleges that he is a member of a protected class. Harris also alleges that he suffered adverse

---

**5.** Although Harris's sexual harassment claim is reasonably related to his EEOC charge, it must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, as more fully discussed below.

employment action. Specifically, Harris alleges that APS transferred him to less desirable job sites—sites that, according to Harris, were "demeaning, physically harmful and psychologically damaging." APS argues that Harris did not suffer adverse treatment because the alternative job sites that he was offered included the same level of pay and benefits as the Bausch and Lomb site. However, Harris' complaint can be read as alleging that the alternative sites, although offering the same level of compensation, were inferior to the Bausch and Lomb site in other respects. In any case, considering the allegations in Harris' complaint as true for purposes of this motion, I find that Harris has sufficiently alleged that he suffered adverse treatment.

■ The third element of the prima facie case is more difficult to resolve. APS argues that the complaint should be dismissed because there is "no causal connection between the protected activity and the [alleged] adverse employment activity," quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1179 (2d Cir.1996). However, APS seems to confuse the disparate treatment claim with a retaliation claim. The appropriate inquiry in a disparate treatment claim is whether the circumstances surrounding the adverse employment decision raise an inference of discrimination. Here, Harris alleges that he filed a complaint against Martinez arising from the incident in which she shouted an offensive remark at him. Harris' complaint also alleges that Martinez lodged a sexual harassment complaint against him. Further, Harris claims that, Martinez' complaint was investigated, while his was not. Finally, according to Harris, after the investigation was completed, he was exonerated and yet still suffered adverse consequences.

Although Harris' disparate treatment claim may be tenuous, at this stage of the case, I am not prepared to find that there are no circumstances under which Harris would be entitled to relief. Therefore, APS' motion to dismiss Harris' disparate treatment sex discrimination claim is denied. This, of course, does not preclude APS from bringing a motion for summary judgment after discovery is complete if such a motion would be appropriate at that time.

### 2. Sexual Harassment

■ Harris checked the box next to "sexual harassment" on that part of his *pro se* complaint that asks the plaintiff to indicate the basis for the complaint.[6] A broad reading of Harris' complaint reveals that Harris' sexual harassment claim relates to the January 24th incident with his co-worker Martinez, during which Martinez told Harris to "kiss my ass." This is the only conceivable claim for sexual harassment contained in Harris' complaint.

Harris' allegation regarding the Martinez incident is insufficient as a matter of law to state a claim for actionable sexual harassment under Title VII. Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ..." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations omitted). " '[M]ere utterance of an ... epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *id.*, quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ Here, Harris' sexual harassment claim was engendered by one incident whereby a co-worker uttered one unsavory remark. Even taking each allegation in Harris' complaint as true, it is clear that the incident described by Harris is not even close to being sufficiently severe or pervasive so as to alter Harris' conditions of employment or create an abusive working environment. Allowing Harris to amend his complaint as to the sexual harassment claim would be futile. Therefore, Harris' claim for sexual harassment is dismissed with prejudice.

### 3. Defamation

Harris' complaint also contains a claim of defamation against APS. The complaint, how-

---

**6.** Harris also checked the boxes marked "race," "sex," and "disability."

ever, is very vague as to what allegedly false statements form the basis of the claim. The only references to the defamation claim in the complaint relate to Harris' allegation that APS representatives told him that he would be returned to the same job site because the investigation was completed and he was cleared. Harris alleges that "[t]hey lied, acting maliciously, to punish without merit, and to cause harm and defamation."

 In New York, the elements of a claim for defamation include (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) publication to a third party; and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Hayes v. Sweeney,* 961 F.Supp. 467 (W.D.N.Y.1997). It is impossible to decipher from the allegations contained in the complaint what statements Harris complains of and to whom they were published. In his memorandum in opposition to APS' motion, Harris claims that the statements that form the basis of the defamation claim are those made by Martinez that Harris had sexually harassed her. The problem with this argument is that the claim that Martinez defamed Harris by accusing him of sexual harassment is nowhere to be found in the complaint. Even giving the complaint a liberal reading, I can find no such claim. Therefore, Harris' claim for defamation must be dismissed with leave to replead.[7]

### CONCLUSION

APS' motion to dismiss (docket entry # 6) is granted, in part, and denied, in part. Harris' race, disability, and sexual harassment claims are dismissed with prejudice. Harris' retaliation and defamation claims are dismissed with leave to replead. APS' motion to dismiss Harris' disparate treatment sex discrimination claim is denied.

Harris' motion to amend his complaint (docket entry # 10) to add causes of action for wrongful termination and perjury is denied, as is Harris' motion to vacate the arbitrator's decision (docket entry # 17) and his

motion for a preliminary injunction (docket entry # 18).

Harris shall have thirty days from entry of this decision to file an amended complaint, consistent with this opinion.

IT IS SO ORDERED.

---

7.  Harris has also moved to amend his complaint to add a claim for wrongful termination and for perjury. This motion is without merit and is hereby dismissed as is Harris' motion for a pre-liminary injunction. Further, Harris' motion to vacate the decision of the arbitrator is also dismissed as untimely.