Syed Saifuddin YUSUF, Plaintiff,

v.

VASSAR COLLEGE, Defendant.

No. 92 Civ. 5462 (KTD).

United States District Court,
S.D. New York.

April 19, 1993.

Judith Reed, New York City (Judith Reed, of counsel); Ronald L. Wilson, New Orleans, LA (Ronald L. Wilson, of counsel), for plaintiff.

Anderson, Banks, Curran & Donoghue, Mount Kisco, NY (Maurice F. Curran, of counsel), for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Syed Saifuddin Yusuf ("Yusuf") brings this action against Vassar College ("the College") alleging the following four causes of action: (1) discrimination on the basis of race under the Civil Rights Act of 1866, 42 U.S.C. § 1981; (2) discrimination on the basis of sex under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688; (3) breach of an implied contract to provide students with a fair hearing; and, (4) intentional infliction of severe emotional distress. The latter two causes of action are based upon the doctrine of supplemental jurisdiction. Plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorney fees.

Defendant now moves, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss plaintiff's first and second causes of action for failure to state a claim upon which relief may be granted. For the reasons set forth below, the defendant's motion to dismiss is granted and the complaint is dismissed in its entirety.

## BACKGROUND

The complaint, which I must take as true for the purposes of the instant motion to dismiss, alleges the following chain of events which led to this action. Plaintiff Yusuf is a native and citizen of the Republic of Bangladesh. Complaint ("Compl.") at ¶ 3. He enrolled as a student at defendant College in the 1989 Fall semester, and his record was exemplary until February of 1992. *Id.* at ¶ 5. On February 11, 1992, plaintiff was allegedly physically attacked by his roommate, James Weisman ("Weisman"), a Caucasian student. *Id.* at ¶ 6. As a result of that attack, the plaintiff suffered unconsciousness, and sustained physical injuries, including a black eye, swollen jaw and contusions. *Id.* Weisman was arrested by Poughkeepsie police and charged with the crimes of battery, intoxication and falsification of identification. *Id.* at ¶ 7. Additionally, the attack was reported to College officials. *Id.*

Thereafter, Weisman and his girlfriend, Tina Kapur ("Kapur"), pleaded with the plaintiff on several occasions to refrain from pursuing the case against Weisman with the local authorities and the College. *Id.* at ¶ 9. Plaintiff agreed not to pursue said charges if Weisman would agree to pay plaintiff's medical expenses incurred as a result of the attack. *Id.* Initially Weisman agreed to pay those expenses, but then apparently equivocated. *Id.* On or about February 17, 1992, the plaintiff advised Kapur that he would not drop the charges against Weisman because Weisman had not paid the plaintiff's medical expenses. *Id.* at ¶ 10.

On February 17, 1992, pursuant to College regulations, Weisman appeared before the College Regulations Panel ("the Panel") at a hearing on the alleged assault of the plaintiff. *Id.* at ¶ 11. The plaintiff appeared as the sole witness against Weisman. *Id.* At the conclusion of the hearing, the Panel found Weisman guilty of assaulting the plaintiff and imposed a suspended suspension against Weisman for the 1992 Spring semester. *Id.* at ¶ 12. Weisman was permitted to remain in school and continue working towards his graduation, which was anticipated at the completion of the 1992 Spring semester. *Id.*

On April 8, 1992, the plaintiff received a letter notifying him that Kapur filed sexual harassment charges against him with the College, and a hearing before the Panel was scheduled for April 13, 1992. *Id.* at ¶ 14. Thereafter, the plaintiff offered a list to Ms. Nichols ("Nichols"), the Chairperson of the Regulations Committee, for approval of twelve potential witnesses that would testify at the hearing.[1] *Id.* at ¶ 16. However, Nichols told the plaintiff to cut that list down to seven witnesses. *Id.* In addition, the plaintiff offered Nichols a written statement from his key witness, who could not be present at the hearing. *Id.* at ¶ 17. However, Nichols refused to allow the plaintiff to present this written statement at the hearing because the witness could not be cross-examined. *Id.* The plaintiff also alleges that he was never informed that the hearing could be postponed due to the absence of a material witness. *Id.* at ¶ 18.

On April 13, 1992, at the start of the hearing, Nichols informed the participants that the matter must be wrapped up within four hours. *Id.* at ¶ 19. Accordingly, Nichols terminated the hearing at the conclusion of four hours, even though the plaintiff had two witnesses who had yet to testify. *Id.* at ¶ 24. Additionally, the Panel would not allow Yusuf to introduce medical records indicating

that he was at the College infirmary on the day of one of the alleged incidents in question. *Id.* at ¶ 22.

On April 14, 1992, the Panel found the plaintiff guilty of sexual harassment and rendered the following decision against him: (1) he was banned from Main Hall, effective immediately; (2) he received a suspended suspension for the remainder of the 1992 Spring semester; and, (3) he was suspended from May 20, 1992 until Spring of 1993. *Id.* at ¶ 25. Thereafter, the plaintiff appealed the Panel's decision to Mr. Colton, the Dean of Student Life, who affirmed the decision of the panel. *Id.* at ¶ 27. The plaintiff then appealed to Dr. Nancy Dye, the acting President of the College, but had yet to receive a response from her at the time he initiated this action on June 22, 1992.[2] *Id.* at ¶ 28.

## DISCUSSION

■■■ On a motion to dismiss, the complaint must be read in the light most favorable to the nonmovant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint cannot be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). Furthermore, the Second Circuit has held that the rule stated in *Conley* applies with even greater force where the plaintiff alleges a violation of his civil rights. *See Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

### A. *The Section 1981 Claim*

Plaintiff's first cause of action alleges discrimination on the basis of race in violation of

---

1. The complaint specifically indicates the date that the plaintiff offered the witness list to Nichols as "April 14, 1992." Cmplt. at ¶ 16. However, in all likelihood, the plaintiff meant to specify a date prior to the hearing. According to the complaint at ¶ 19, the hearing took place on April 13, 1992.

2. It should be noted that subsequent to the filing of this lawsuit, Dr. Dye denied the appeal. *See* Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss Complaint at 15. While this assertion is not found in the pleadings, there is no denial of it by the defendant. Because of this, I have not considered the issue of whether administrative remedies have to be exhausted prior to filing suit.

the Civil Rights Act of 1866, 42 U.S.C. § 1981. Section 1981 states, in pertinent part, that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to *make and enforce contracts* ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ..., and shall be subject to like punishment....

42 U.S.C. § 1981 (emphasis added).

On November 21, 1991, the Civil Rights Act of 1991 was enacted. Pub.L. No. 102–166, 105 Stat. 1071 (1991) (codified as amended 42 U.S.C. § 1981 (Supp.1992)) ("1991 Act"). The 1991 Act specifically amended § 1981 by adding, *inter alia,* subsection (b) which states that, "[f]or purposes of this section, the term 'make and enforce contracts' includes ... the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (Supp.1992).

■ Section 1981 has been construed as a prohibition against racial discrimination. *See Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987); *Gen. Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 384–91, 102 S.Ct. 3141, 3146–50, 73 L.Ed.2d 835 (1982); *Runyon v. McCrary,* 427 U.S. 160, 168–69, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976) (citations omitted). The provisions of § 1981 extend to private acts of racial discrimination. *See Runyon,* 427 U.S. at 168–75, 96 S.Ct. at 2593–96. The purpose of § 1981 is "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination because of their ancestry or ethnic characteristics." *Al–Khazraji,* 481 U.S. at 613, 107 S.Ct. at 2028. In its broad terms, § 1981 "proscribe[s] the making or enforcement of contracts against, or in favor of, any race." *McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 295, 96 S.Ct. 2574, 2586, 49 L.Ed.2d 493 (1976).

■ To state a claim under § 1981, the plaintiff must allege that the defendant's actions were purposefully discriminatory and racially motivated. *See Gen. Bldg. Contractors,* 458 U.S. at 391, 102 S.Ct. at 3150; *Albert v. Carovano,* 851 F.2d 561, 571–72 (2d Cir.1988). In this circuit, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978) (citation omitted). Thus, under § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under Rule 12(b)(6). *See Gen. Bldg. Contractors,* 458 U.S. at 391, 102 S.Ct. at 3150; *Albert,* 851 F.2d at 572; *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 17 (1st Cir.1989); *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982).

■ In the case at bar, the plaintiff alleges that the defendant violated his rights under the Civil Rights Act of 1988, 42 U.S.C. § 1981, by virtue of the fact that: (1) he is a native and citizen of the Republic of Bangladesh; (2) the Panel found him guilty of sexual harassment; (3) the penalty imposed upon the plaintiff was disparate when compared to the penalty imposed upon Weisman, a Caucasian student, who was found guilty of assault. Compl. at ¶¶ 30–35. Specifically, the plaintiff alleges that "[r]ace was a motivating factor behind the guilty verdict returned against plaintiff and the disparity in the sentence rendered in the two cases." *Id.* at ¶ 35.

The defendant argues, however, that the plaintiff's complaint alleges no facts upon which a court could find a violation of the Civil Rights Act based upon racial discrimination and, as such, it must be dismissed. *See* Defendant's Memorandum of Law In Support of Defendant's Notice of Motion to Dismiss Complaint Pursuant to Federal Rules Civil Procedure 12(b)(6) ("Def.Mem.") at 6. I agree; without factual allegations which evidence discriminatory intent, the claim is not stated in sufficient factual detail to set forth a cognizable claim under § 1981. *See Albert,* 851 F.2d at 572–73. The naked assertion by plaintiff that "race was a moti-

vating factor" without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss. *Id.; Martin,* 588 F.2d at 372; *Dartmouth Review,* 889 F.2d at 19; *Jafree,* 689 F.2d at 643.

■ Furthermore, the plaintiff failed to allege a claim of selective enforcement. To state to a claim of selective enforcement, the plaintiff must allege " 'purposeful and systematic discrimination' by specifying instances in which they were 'singled ... out for unlawful oppression' in contrast to others *similarly situated." Albert,* 851 F.2d at 573 (citations omitted). Simply stated, the plaintiff must allege that he was treated more harshly than similarly situated persons of another race. *Id.; Martin v. Citibank,* 762 F.2d 212, 217 (2d Cir.1985).

In his complaint, the plaintiff nakedly asserts that he received a harsher penalty compared with the penalty imposed upon Weisman, a Caucasian, and that race was the motivating factor behind the disparity of the sentence. Compl. at ¶¶ 31–35. I find that plaintiff's conclusory allegations do not give rise to a § 1981 claim. The respective disciplinary proceedings and resultant penalties imposed upon the plaintiff and Weisman are not reasonably comparable situations which would provide a basis for the plaintiff's claim for disparate treatment. "The test is whether a prudent person looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Dartmouth Review,* 889 F.2d at 19. Comparing the plaintiff's sexual harassment charge with Weisman's assault charge is like comparing apples with oranges. Thus, I find no commonality sufficient to sustain the close comparison urged by the plaintiff.

Accordingly, because the plaintiff failed to plead specific facts supporting the allegation that the defendant's actions were intentionally discriminatory and racially motivated or to support a claim of selective enforcement, the first cause of action must be dismissed.

### B. *The Section 1681 Claim*

■ Plaintiff's second cause of action alleges discrimination based on sex in violation Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Section 1681 states, in pertinent part, that:

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681.

The Supreme Court has interpreted § 1681 as providing an implied right of action under Title IX. *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979). The purpose of this statute is to avoid use of federal funds to support discriminatory practices and to provide individual citizens with effective protection. *Id.* at 704, 99 S.Ct. at 1961. In addition to Title IX, the Department of Education has promulgated regulations governing the administration of programs that receive federal funding. The regulations applicable to this case are found at 45 Code of Federal Regulations §§ 86.1–86.71 (1992).[3]

Interestingly, neither the Supreme Court nor the Court of Appeals for the Second Circuit has determined specifically whether intent must be shown in Title IX cases. *Sharif v. New York State Educ. Dept.,* 709 F.Supp. 345, 360 (S.D.N.Y.1989). In fact, courts examining the issue are divided.[4] It

---

**3.** It should be noted that I do not address the issue of whether the disciplinary proceedings in this case fall within the purview of § 1681 and its applicable regulations. The plaintiff's complaint is dismissed on other grounds as set forth in this Memorandum and Order.

**4.** *Compare Fulani,* 684 F.Supp. 1185, 1193 (Title IX requires that the plaintiff show intentional sex discrimination); *Cannon v. Univ. of Chicago,* 648 F.2d 1104, 1109 (7th Cir.), (same), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117

(1981); *Nagel v. Avon Bd. of Educ.,* 575 F.Supp. 105, 109 (D.Conn.1983) (same) *with Sharif,* 709 F.Supp. at 360–361 (Title IX plaintiff need not prove discriminatory intent); *Cook v. Colgate University,* 802 F.Supp. 737, 741–42 (N.D.N.Y. 1992) (same); *Haffer v. Temple University,* 678 F.Supp. 517, 539 (E.D.Pa.1987) (same). However, I need not decide the issue of whether a Title IX plaintiff must show intentional sex discrimination. The plaintiff's complaint is devoid of any facts supporting any claim of sex discrimination.

seems, however, a number of courts have held that a Title IX plaintiff could prevail on the basis of disparate impact. *See Sharif*, 709 F.Supp. at 360–61; *Fulani v. League of Women Voters Educ. Fund*, 684 F.Supp. 1185, 1193 (S.D.N.Y.1988).

The complaint alleges that the Panel believed Kapur's testimony because she was a female, and disbelieved the plaintiff's testimony because he was a male. Compl. ¶ 39 at 9, ¶ 35 at 10. Specifically, the plaintiff makes the naked assertion that the College has "historically and systematically rendered verdicts against males in sexual harassment cases, solely on the basis of sex" and that "males are invariably found guilty, regardless of evidence, or lack thereof." *Id.* ¶ 34 at 10. Defendant argues, however, that the plaintiff has failed to allege facts sufficient to support his allegation of discrimination based upon sex. Def.Mem. at 15.

The plaintiff's complaint does not set forth any facts to show that the Panel's guilty finding against the plaintiff was sexually motivated. Nor does the complaint identify any particular discriminatory practices of the College to produce the claimed disparity. The bald assertion that the plaintiff was found guilty and received a harsher penalty because he was a male confronting a female accuser is too conclusory to withstand a motion to dismiss. *See Albert*, 851 F.2d at 572; *Barr v. Abrams*, 810 F.2d 358, 362–63 (2d Cir.1987); *Martin*, 588 F.2d at 372. Thus, because the plaintiff's wholly conclusory assertions do not suffice to state a claim under § 1681, the second cause of action is dismissed.

The plaintiff's third cause of action (contract claim) and fourth cause of action (tort claim) asserted in the plaintiff's complaint are brought under the doctrine of supplemental jurisdiction. As authorized under § 1367(c)(3), I decline to exercise supplemental jurisdiction over a claim where the court "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, the third and fourth causes of action are dismissed.

For the foregoing reasons, the defendant's motion to dismiss the first and second causes of action is granted. This court exercises its discretion not to hear the pendent state claims asserted in plaintiff's third and fourth causes of action. Accordingly, the plaintiff's complaint is hereby dismissed in its entirety.

SO ORDERED.