Marvin ASTRADA, Plaintiff,

v.

David HOWARD, et al., Defendants.

No. CIV. 3:95CV01318(AVC).

United States District Court,
D. Connecticut.

April 8, 1997.

Karen Lee Torre, New Haven, CT, for Plaintiff.

Brian Thomas Fischer, Corp. Counsel's Office, West Haven, CT, for Defendants.

### RECOMMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SMITH, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff has delivered unto the court a kitchen-sink complaint that taunts even the liberal bounds of notice pleading. In the most conclusory of fashions, in the final paragraphs of his complaint, plaintiff alleges that the defendants violated his Second Amendment, Fourth Amendment and Fourteenth Amendment rights. He serves up these federal claims on 42 U.S.C. §§ 1983 and 1981, but does not allege which acts of which defendant violated which of these rights. This task he leaves to the court. He also alleges a common law claim for intentional infliction of emotional distress. Defendants hang their motion for summary judgment on the existence of probable cause and the protections of qualified immunity.

## II. FACTS

The plaintiff, Marvin Astrada, is a Hispanic male. When the incident from which this case derives occurred, he was 17 years old. Defendants David Howard, Dominick Reis, George Carpenter and Edward Allen are officers in the West Haven Police Department. Defendant Harry Carroll is West Haven's chief of police.

On July 2, 1992, at approximately 3:00 a.m., Astrada was walking near the intersection of Elm Street and Campbell Avenue in West Haven. He was carrying a handgun, under a valid permit, at the time. A truck driven by Thomas Schwall was at or near the intersection; Pasquale Salvatore, Paul Menga, Kevin Jason were passengers in Schwall's vehicle. Schwall had pulled into the Burger King parking lot to talk to some of his friends (Anthony Rignoli, Kareem Trim and Steve Herrick).

A verbal confrontation developed between Astrada and the Schwall group. At some point during this confrontation Astrada displayed his handgun and one of the young men—Salvatore—left the truck and approached him.

Astrada pointed his weapon at Salvatore and told him to "stop" or "freeze." Pl.'s Dep. at 44. When Salvatore continued his approach, Astrada turned and ran toward the West Haven Police Department located nearby. Salvatore pursued him on foot, and Schwall followed in the truck. As the truck drew close to him, Astrada turned and fired his weapon. He maintains that the truck was on the sidewalk when he fired in self-defense and that he aimed at the grill. The bullet struck the middle of the windshield; no one was injured.

The truck stopped, but Salvatore, joined by Jason, continued to chase Astrada on foot. Astrada arrived at the police station first. He burst into the lobby, banged frantically on the desk window and brandished his loaded .45 caliber weapon. Officers Reis, Carpenter and Allen secured Astrada and disarmed him. Salvatore and Jason arrived seconds later and informed officers that Astrada had shot at them. Astrada was separated from Salvatore and Jason and placed in a room at the station while officers attempted to sort out what had happened.

Schwall and Menga arrived shortly thereafter, as did Officer Howard. Howard took statements from Schwall, his friends and Astrada. Howard then arrested Astrada, formally charging him with reckless endangerment, unlawful discharge of a firearm and breach of peace. He applied twice for an arrest warrant for Schwall; both times prosecutors denied the warrant. All charges against Astrada were eventually nolled.

Howard also confiscated Astrada's pistol permit and turned it over to defendant Carroll, who revoked it. More than a year after his arrest, after the charges against him were nolled, Astrada requested that Chief Carroll reinstate his pistol permit. Chief Carroll refused. On June 30, 1995 the plaintiff filed this action against defendants Howard, Reis, Carpenter, Allen and Carroll.

## III. THE STANDARD

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in the light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

Summary judgment is generally inappropriate where intent and state of mind are at issue. Montana v. First Federal Savings & Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d Cir.1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Nonetheless, "the salutary purposes of summary judgment—avoiding protracted, expensive, and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." Id.

## IV. DISCUSSION

Before turning to the specifics of this case, a brief tour through the general requirements of § 1983 and § 1981 causes of action is in order.

### A. General Requirements Under § 1983

The general requirements for a § 1983 cause of action were recently summarized in *Robinson v. Town of Colonie*, 878 F.Supp. 387 (N.D.N.Y.1995):

> Section 1983 provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated. [I]n order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Moreover, it is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.

*Robinson*, 878 F.Supp. at 394(citations omitted, internal quotations omitted).

### B. General Requirements Under § 1981

 The purpose of § 1981 is "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination because of their ancestry or ethnic characteristics." *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582, *reh'g denied*, 483 U.S. 1011, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987). Plainly put, "[s]ection 1981 has been construed as a prohibition against racial discrimination." *Yusuf v. Vassar College*, 827 F.Supp. 952, 955 (S.D.N.Y.), *aff'd in part. rev'd in part on other grounds*, 35 F.3d 709 (1994) (citing *Al–Khazraji*, 481 U.S. at 608–10, 107 S.Ct. at 2026). However, to fall within the purview of § 1981, a defendant's actions must have been intentionally and purposefully discriminatory, and the plaintiff's race must have been the motivating factor behind the defendant's discriminatory acts. *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir.1988) (citations omitted). Moreover, it is clear "that under § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint...." *Yusuf*, 827 F.Supp. at 955(citation omitted). And "naked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory...." *Id.* at 955–56(citation omitted, internal quotation omitted); *see also Albert*, 851 F.2d at 562 (naked allegation that defendants selectively enforced college rules against plaintiffs because they were minorities was too conclusory); *Brown v. City of Oneonta*, 858 F.Supp. 340, 345 (N.D.N.Y.), *rev'd in part on other grounds, appeal dismissed in part*, 106 F.3d 1125 (1997) (Under § 1981, plaintiffs must allege some facts that demonstrate their race was the reason for the defendant's actions.); *Davis v. Frapolly*, 747 F.Supp. 451, 453 (N.D.Ill.1989) (§ 1981 claim is insufficient where, "based upon the facts plaintiff alleges, the court cannot infer that if plaintiff were white he would have been treated differently"); *Donaire v. NME Hosp., Inc.*, 27 F.3d 507, 510 (11th Cir.1994) (where it was established that defendant's decisions were not based on factors of race or alienage, those decisions did not violate § 1981 and summary judgment was appropriate).

 Additionally, "to state a claim for selective enforcement [under § 1981], ... plaintiff[s] must allege purposeful and systematic discrimination by specifying instances in which they were singled ... out for unlawful oppression in contrast to others similarly situated." *Yusuf*, 827 F.Supp. at 956 (citation omitted, internal quotation omitted). When a plaintiff claims that he received a harsher penalty because of his race, "[t]he test is whether a prudent person looking objectively at the incidents would think them roughly equivalent and the protagonists similarly situated." *Id.* (citation omitted, internal quotation omitted).

### C. Federal Claims Stemming From Plaintiff's Detention and Arrest

 Plaintiff alleges that his arrest on July 2, 1992, violated his Fourth Amendment rights, made applicable to the states by the Fourteenth Amendment. It is entirely unclear from his complaint whether he alleges

the arrest also violated his rights to equal protection[1] and due process, or whether he molds this claim around § 1983, § 1981 or both.[2] Ever mindful of its role at the summary judgment stage of litigation, the court will consider all possible claims.

■ There is some dispute about when plaintiff was actually arrested and who arrested him. Plaintiff maintains that he was under arrest when he was secured on his arrival at the police station and placed in a "scummy" room[3] by officers Reis, Carpenter and Allen; defendants maintain Astrada was not arrested until Officer Howard, after taking statements from all persons involved in the incident, formally charged him. Generally, "it [is] . . . a jury's task to decide whether a detention amounted to a *de facto* arrest, since the issue of precisely when an arrest takes place is a question of fact." *Oliveira v. Mayer,* 23 F.3d 642, 645 (2d Cir.), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 722, 130 L.Ed.2d 627 (1995) (citation omitted, internal quotation omitted). However, a District Court may decide, as a matter of law, whether a detention rises to the level of an arrest or is merely a *Terry*-type detention when " 'there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.' " *Id.* (quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 359 (2d Cir.), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993)).

Certain facts spelled out above warrant repeating: At approximately 3:00 a.m. plaintiff "burst" into the West Haven police station, banged frantically on the desk window, and brandished a smoking gun which he had just fired through the windshield of an occupied vehicle. Seconds later, Schwall and his friends arrived at the station and informed officers that Astrada had shot at them. Astrada was separated from the Schwall group and placed in a room at the station while the police attempted to sort out the matter and took statements from Schwall and the others.

Plaintiff will not be heard to complain that he was secured and disarmed upon his arrival at the police station. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *See also Gagnon v. Ball,* 696 F.2d 17, 21, n. 4 (2d Cir.1982) (officer confronting a person carrying a dangerous weapon may stop and disarm that person). Nor should plaintiff complain about being placed in a room while Officer Howard took statements from those who may well have appeared at the time to be Astrada'a victims. In *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Court held that taking a suspect from his home to the police station and detaining him there for questioning was a detention intrusive enough on the suspect's liberty to require a showing of probable cause. In this case, conversely, Astrada, frantic and waving a loaded gun, *delivered himself* to the police station. The police had no choice but to attempt to sort out the matter *at* the station.

The detention of Astrada was no more intrusive than necessary under the circum-

---

**1.** "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group. It is not necessary, however, that a plaintiff prove that the challenged action rested solely upon racially discriminatory purposes; only that the discriminatory purpose was a motivating factor in the decision. A plaintiff may satisfy this evidentiary burden either by introducing facts establishing that discriminatory racial intent was the most likely motivation for the action in question, or that the defendant's alternative explanation for its action is impossible." *Robinson,* 878 F.Supp. at 402. (citations omitted, internal quotations omitted).

**2.** In *Jett v. Dallas Independent School District,* the Supreme Court held that "[t]he express action at law provided by § 1983 for the 'depriva-

tion of any rights, privileges, or immunities secured by the Constitution and laws,' provides the **exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.**" 491 U.S. 701, 735, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (emphasis added). This, however, is no longer so. The Civil Rights Act of 1991 overruled, in pertinent part, *Jett* and added subsection (c) to § 1981, which reads: "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and **impairment under color of State law.**" 42 U.S.C. § 1981(emphasis added); *See Robinson,* 878 F.Supp. at 405, n. 13. Thus, plaintiff may appropriately assert claims under both § 1983 and § 1981.

**3.** *See* Pl.'s Dep. at 71, 72 and 76.

stances, it was based upon the officers' reasonable and articulable suspicions and therefore it need not have been supported by probable cause. *United States v. Marin*, 669 F.2d 73, 81 (2d Cir.1982); see also *United States v. Vasquez*, 638 F.2d 507, 520 (2d Cir.), *cert. denied*, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). Simply put, one who 1) runs into a police station with a smoking gun, 2) is restrained by police, 3) accused seconds later by four panting individuals who claim to have been shot at by that person, and then 4) placed in a room for a brief period while officers promptly attempt to sort out what has happened, will not be heard in this court to complain about the reasonableness of the officers' conduct or disparate treatment.

For the above reasons, the court concludes that Astrada was not under arrest when officers Reis, Carpenter and Allen placed him in the "scummy" room at the police station. Accordingly, these officers need not demonstrate that their actions were supported by probable cause, but rather only that they were reasonable. *Vasquez*, 638 F.2d at 520. This notwithstanding, the court finds, given the circumstances, that had these officers gone further, had they decided to arrest Astrada, their decision to do so would indeed have been supported by probable cause.

It has long been established that determinations about probable cause are made based upon the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "Probable cause exists when a person of reasonable caution would be justified in believing that the individual to be arrested has committed, is committing, or is about to commit a crime." *United States v. Marin*, 669 F.2d 73, 81 (2d Cir.1982). *See also Wong Sun v. United States*, 371 U.S. 471, 477–79, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963); *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir.), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992) (Probable cause exists when "the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person arrested."). Moreover, the motivation of arresting officers is not a consideration in assessing probable cause. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996) (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir.1992)). And **there can be no federal civil rights claim for false arrest where the arresting officer had probable cause.** *Id.* at 118 (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)).

Plaintiff's side of the story may indeed be true, but he should not—and the court must not—confuse its potential truth with the facts upon which a determination about the reasonableness of Astrada's detention or an assessment of probable cause must be made. Based upon the undisputed facts, the court concludes that officers Reis, Carpenter and Allen reasonably detained Astrada; and had they arrested him, the arrest would have been supported by probable cause. Moreover, and more importantly, the record establishes that Officer Howard had probable cause to arrest Astrada on July 2, 1992. Howard took statements from all parties involved in the incident, determined that Astrada had pointed his weapon at Schwall and/or his group and that Astrada had indeed fired his weapon through the windshield of Schwall's occupied vehicle. He subsequently, and appropriately, charged and arrested Astrada.

Officer Howard was faced with seven eyewitness accounts—and four signed statements—that maintained Astrada was the aggressor.[4] "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119. Though, to be sure, plaintiff disputed Schwall's version of the story, the court can-

---

4. Schwall, Salvatore, Menga and Jason signed written statements; Rignoli, Trim and Herrick gave oral statements. See Exhibits in Support of Defendants' Motion For Summary Judgment at 15–16 (report of Officer Howard).

not say that his protestations were sufficient to nullify the probable cause borne out by the sworn statements of Schwall and his friends. Conversely, the signed statements of Schwall and his friends were sufficient to call into question Astrada's veracity.

Finally, at the risk of crossing the overkill threshold, the court also notes that the actions of Howard, Reis, Carpenter and Allen were surely within the realm of qualified immunity. *See Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)

> Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits. Government actors performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. The objective reasonableness test is met— and the defendant entitled to immunity— if officers of reasonable competence could disagree on the legality of the defendant's actions.

*Id.* (citations omitted, internal quotations omitted). And, the question of immunity is ordinarily decided by the court "where facts concerning the availability of the defense are undisputed." *Oliveira,* 23 F.3d at 649 (citations omitted, internal quotation omitted). The undisputed facts detailed above lead the court unavoidably to its conclusion that officers Howard, Reis, Carpenter and Allen were shielded by qualified immunity.

Once again, it appears from the complaint that plaintiff may have intended, under § 1983 and § 1981, Fourth Amendment, equal protection and due process claims stemming from his arrest. Defendants' motion for summary judgment on any such intended claims should be **GRANTED.** The court having concluded that plaintiff's arrest was supported by probable cause, it is clear that neither his Fourth Amendment nor his Fourteenth Amendment due process rights were violated. Similarly, the undisputed facts establish that his detention did not violate § 1981 or his equal protection rights. There simply are no facts in the record from which the court might infer that plaintiff would have been treated differently if he were white.

**D. Failure to Intervene**

Plaintiff maintains that officers Reis, Carpenter and Allen should be liable for their failure to intervene in Officer Howard's arrest of Astrada. *See Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982). The court has concluded that officer Howard had probable cause to arrest Astrada. This being so, plaintiff's failure-to-intervene claim is completely without merit. Accordingly, defendants' motion for summary judgment as to any Fourth Amendment or Fourteenth Amendment violation stemming from this claim should be **GRANTED.**

**E. Filing a False Police Report**

Plaintiff also claims that Officer Howard filed a false police report. This is a state claim which plaintiff seeks to convert into a federal cause of action by alleging that the content of Howard's report was skewed by racial bias. However, a comparison of Astrada's statement to police and the report filed by Officer Howard makes clear that the report does not in any material way misstate or mischaracterize Astrada's side of the story. In short, it is not in any way a false report. It reads, in relevant part:

> I then spoke with Marvin Astrada and he was advised of his Miranda rights. Astrada stated that he observed the Ford pull into Burger King's parking lot. One of the occupants of the truck got out of the truck and started to yell at him, saying "I'm going to kill you." Astrada said he took out his gun and pointed it at them. They began to chase after him so he started to run towards the police station. Astrada stated he was running on the sidewalk and

one male was chasing him on foot while the others were in the Ford. Astrada felt that he was going to be hit by the Ford so he turned and pointed his Glock 45 caliber at the radiator grill of the Ford and pulled the trigger. After he did this, the Ford stopped chasing him but the male on foot continued so he ran to the police department where he turned himself in to the officers.

Exhibits in Support of Defendants' Motion for Summary Judgment at 9–10, 15–16. Plaintiff claims the report is false because it states that he "pointed" his gun at Schwall and/or his friends; and he denies ever making such a statement. Plaintiff's Statement of Material Facts in Dispute at 2–3. Astrada's deposition, however, betrays his position: "I took out my handgun. I took it out. I pointed it at him...." Pl.'s Dep. at 44. Plaintiff also alleges that Officer Howard's police report is false because it states that Astrada "turned himself in" to the officers, and omits material facts, namely that Astrada discharged his weapon in self-defense. Plaintiff's Statement of Material Facts in Dispute at 2. The report speaks for itself. It makes abundantly clear that Astrada claimed to have fired his weapon in self-defense, i.e., only when he believed he was going to be hit by the truck. Moreover, plaintiff cannot seriously take issue with Howard's statement that Astrada "turned himself in."

It is undisputed that Astrada delivered himself to the West Haven police station. It is further undisputed that Schwall, Salvatore, Menga and Jason gave written statements implicating Astrada. In addition, three other eyewitnesses—Rignoli, Trim and Herrick—gave oral statements to the same effect. Astrada may well have delivered himself to the station hoping that officers would vindicate him. In other words, he may have hoped that the police would conclude he had rightfully discharged his weapon and arrest his alleged assailants. That they did not does not change the fact that he turned himself over to police on July 2, 1992; and he will not now be heard to complain that, on this score, Howard's report is false.

In short, it is an analysis of the facts, not the law of § 1981 or § 1983 that defeats this claim. Defendant Howard's motion for summary judgment on any federal claims plaintiff may have intended stemming from the filing of a false police report should be **GRANTED**.

## F. Chief Carroll

 Plaintiff also attempts to convert Chief Carroll's revocation of, and refusal to reinstate, his pistol permit into a federal claim by alleging that Carroll's actions were driven by racial animus. Again, it is possible, though far from clear, that plaintiff intends to assert Second Amendment, Fourth Amendment, and Fourteenth Amendment claims under both § 1981 and § 1983. Subsequent to Astrada's arrest, Chief Carroll revoked his pistol permit. Plaintiff in no way challenged Carroll's decision until more than a year after the permit had been revoked, well after the time period for such a challenge had run.

Defendant Carroll has not provided the court with information about the regulations or processes that governed his actions. He has not even provided the court with an affidavit. In short, despite the conclusory nature of plaintiff's allegations, Defendant Carroll has offered no evidence whatsoever to justify his revocation and, more importantly, his refusal to reinstate Astrada's permit after the charges against Astrada were nolled. Therefore, Chief Carroll's motion for summary judgment on the charges against him should be **DENIED without prejudice.**

## G. Intentional Infliction of Emotional Distress

Defendant Carroll has also neglected to respond to plaintiff's intentional infliction of emotional distress claim. This being so, and there being federal claims still pending before this court to support pendant jurisdiction, his motion for summary judgment on this claim is also **DENIED without prejudice.**

## V. CONCLUSION

A thorough review of the complaint, the memoranda and the exhibits filed in this case—including Officer Howard's police re-

port—establishes that officers Howard, Reis, Carpenter and Allen did nothing wrong. When Astrada burst into the station brandishing a gun, the officers at the station were understandably alarmed. They secured and disarmed him, and separated him from the Schwall group until the volatile matter could be sorted out. Officer Howard then took statements from all the parties, filed an incident report, reviewed a supplementary report filed by Detective Brunetti, formally charged Astrada and applied twice for an arrest warrant for Schwall. Both times the Schwall warrant was denied.

The actions of Schwall and his cohorts may indeed have been motivated by racial biases; and to the extent their actions of July 2, 1992 were so motivated, those actions were despicable. The prosecutor, however, determined that this case did not warrant prosecution—of Schwall or Astrada—as it is within his discretion to do. The court concludes that defendants' motion for summary judgment should be **GRANTED in part** and **DENIED without prejudice in part** as follows:

**GRANTED** as to any § 1981, § 1983 Fourth Amendment, equal protection or due process claims plaintiff intends against officers Howard, Reis, Carpenter and Allen.

**DENIED without prejudice** as to any Second, Fourth and Fourteenth Amendment claims plaintiff intends against Chief Carroll.

**DENIED without prejudice** as to plaintiff's intentional infliction of emotional distress claim.